Angelia Nicholson DUNCAN,
Plaintiff-Appellant,

v.

Joseph Frank DUNCAN,
Defendant-Appellee,

and

Security Alarms & Services, Inc.,
Additional Defendant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Oct. 30, 1984.

Application for Permission to Appeal
Denied by Supreme Court
Feb. 25, 1985.

John W. Nolan, III, Philip Duer, William R. Willis, Jr., Nashville, for plaintiff-appellant.

Charles H. Warfield, James G. Martin, III, Farris, Warfield & Kanaday, Nashville, for defendant-appellee.

## OPINION

TODD, Presiding Judge, Middle Section.

The plaintiff, Angelia Nicholson Duncan, has appealed from the judgment of the Trial Court which granted her an absolute divorce and alimony in solido, but no periodic alimony or attorneys fees.

As issues, appellant cites seven alleged errors of the Trial Judge as follows:

1. Failing to find defendant guilty of adultery.
2. Failing to properly analyze the assets of the parties....
3. Failing to award punitive alimony.
4. Failing to award alimony in futuro.
5. Failing to award more alimony in solido.
6. Failing to award attorneys fees.

7. Granting to defendant certain personal property.

As to the first alleged error, the judgment of the Trial Court found the defendant guilty of cruel and inhuman treatment, but not of adultery. Appellant insists that she has a right to a judicial determination of defendants adultery because he admitted it and she needs such an adjudication because of her regligious beliefs. No authority is cited to support this insistence and none has been found.

■ As important as a person's religious beliefs may be, there is no provision in our law or system of justice which entitles a citizen to a judicial declaration of fact to establish a religious right. Such rights are determined by ecclesiastical bodies which must make their own findings of fact for purposes of their decisions.

■ The primary ultimate issue in this case was whether plaintiff was entitled to an absolute divorce. Two subordinate evidentiary issues were whether defendant was guilty of adultery and/or cruel and inhuman treatment. The Trial Judge decided the second evidentiary issue in favor of plaintiff. She did not decide the first evidentiary issue (adultery). She was not specially requested to make a finding as to adultery; and, if such request had been made, there is no showing of any prejudice from its denial, since the ultimate decision was favorable to plaintiff. TRAP Rule *36(b)*.

The first alleged error of the Trial Court, if error, does not require reversal.

The second alleged error of the Trial Judge is worded by appellant as follows:

The Trial Court erred in failing to properly analyze the assets of the parties by inflating Mrs. Duncan's assets and substantially devaluing Mr. Duncan's assets in contradiction of the evidence adduced at trial.

Although the foregoing complaint appears in capital letters at the beginning of section II of plaintiff's argument, no reference is found in plaintiffs argument to the valuation of Mrs. Duncan's assets. The argument discusses only the valuation of Mr. Duncan's interest in his business. This opinion will discuss only those matters discussed in the argument.

Mr. Duncan was shown to be the owner of 5,000 shares (47.2%) of the stock of Security Alarms and Services, Inc.

The Trial Judge filed a Memorandum Opinion containing extensive findings of fact, including the following:

The Court finds that with respect to the stock of Security Alarms and Services that it was accumulated through the joint efforts of the parties. The Court further finds that an equitable division of this asset would be ¼ to Mrs. Duncan and ¾ths to Mr. Duncan. The total value of the asset is $400,000.00. However, since the stock of Security Alarms is closely held, the value of Mrs. Duncan's interest will be taken from the other jointly owned property.

... [O]ther jointly owned piece of property is the Williamson County farm, having a value of $105,000. Mr. Duncan's interest in the farm should be awarded to Mrs. Duncan as partial compensation for her interest in Security Alarms and Services. In addition, Mr. Duncan should pay to Mrs. Duncan the sum of $47,-500.00 in cash to complete the payment for her interest in Security Alarms and Services. Upon the payment of said amount Mrs. Duncan's interest in Security Alarms shall be divested out of her and vested in Mr. Duncan.

It is seen from the above that the Trial Judge awarded to plaintiff a one-half interest in a $105,000 farm which amounted to $52,500, and required payment to plaintiff of $47,500 cash, making a total of $100,-000.00 awarded to plaintiff in lieu of ¼ of defendant's 47.2% interest in the business.

The finding of the Trial Judge, above, that "the total value of *this asset* is $400,-000" is interpreted to mean the total value of defendant's interest in the business, i.e. 47.2%.

Appellant relies upon the testimony of her expert witness, Mr. Garrett, who testi-

fied that Mr. Duncan's interest in the corporation was worth $1,250,000.00.

Appellee relies upon the testimony of his two experts, Blankenship and Kraft, that Mr. Duncan's stock was worth "between $300,000 and $400,000" and "$350,000". Thus the Trial Judge rejected the testimony of appellant's witness and adopted the highest estimate of appellee's witnesses.

■ On appeal, both parties argue at length the qualifications of the experts and the bases of their appraisals. Without detailing the many considerations entering into the valuation of stock of a private closely held corporation, this Court is satisfied that the Trial Judge reached the correct result. The decision of the Trial Judge is to be reviewed by this Court de novo with a presumption of correctness unless the evidence preponderates otherwise. The evidence does not preponderate otherwise.

■ The findings of the trial judge in a non-jury case are entitled to great weight where the trial judge saw and heard the witnesses and observed their manner and demeanor on the stand and was therefore in much better position than the appellate court to judge the weight and value of their testimony. *Smith v. Hooper,* 59 Tenn.App. 167, 438 S.W.2d 765 (1968).

■ This Court has considered the various circumstances urged by counsel as weakening the weight of the experts who testified, but is nevertheless satisfied to affirm the finding of the Trial Judge in respect to the value of defendant's interest in the business.

Sections III, IV and V of appellant's argument are devoted to the following complaints:

> The Trial Court erred in finding that this was not a case where the assessment of punitive alimony against Mr. Duncan was proper.
> The Trial Court erred by failing to grant Mrs. Duncan alimony in futuro.
> (For convenience and continuity, these issues will be discussed together.)

> The Trial Court erred in failing to award Mrs. Duncan more alimony in solido.

It is true that some Tennessee authorities mention "relative or comparative responsibility of each spouse" as one of the considerations in allowing alimony or fixing the amount thereof, but no decision cited to or known by this Court has awarded alimony in excess of the needs of the aggrieved spouse solely for the purpose of punishing ill conduct.

Some Tennessee authorities refer to consideration of "fault" or "comparative responsibility", but none suggests that alimony should be fixed in excess of the needs of the wronged spouse for the purpose of punishing the guilty spouse.

For example, in *Fisher v. Fisher,* Tenn. 1983, 648 S.W.2d 244, there was no issue as to amount of alimony; but the Supreme Court, in rejecting fault as a consideration for division of property, simply said:

> There is no question that fault and need are to be considered in determining alimony in futuro. T.C.A. § 36–820. (648 S.W.2d at 247).

In *Massey v. Massey,* Tenn.1981, 621 S.W.2d 728, the Supreme Court considered a contention that the alimony awarded to the wife should be *reduced* because of her misconduct. The Court cited authority from other jurisdictions for reducing alimony for misconduct of the wronged spouse, declined to reduce alimony in that case, but said:

> We conclude that "the nature of the case and the circumstances of the parties" allows the Court, in fixing alimony, "to consider the conduct of the parties with reference to the cause of the divorce and *the relative* or comparative responsibility of each spouse therefor". (621 S.W.2d at 730)

■ This Court interprets the above to approve reduction of alimony for misconduct of the wronged spouse, but not the addition of unneeded alimony to punish the guilty spouse.

This Court rejects the proposed allowance of "punitive alimony" as such.

As to periodic alimony (which was not decreed), appellant cites *McClung v. McClung*, 29 Tenn.App. 580, 198 S.W.2d 820 (1946), in which this Court said:

In view of the facts of this case as herein detailed we feel that it is a proper case for alimony. The equity of the husband in the home should be given the wife as alimony in addition to the personal property awarded her. It was the duty of this man to support his wife. Alimony is to be allowed her as a consequence of this duty. In allowing alimony the courts do not do so as a penal measure but out of the common-law duty of the husband ·to the wife. *Toncray v. Toncray*, 123 Tenn. 476, 494, 131 S.W. 977, 34 L.R.A., N.S., 1106, Ann.Cas. 1912C, 284. The courts do and should consider the conduct of the husband in fixing alimony-it is his conduct that gives her the right to a divorce.

"The husband owes the duty to his wife of rendering to her suitable support without reference to her financial condition. He ought not to be allowed to escape the performance of that duty by affording his wife cause for separation and placing her in a financial situation worse than it was before his misconduct brought about a legal separation." *Williams v. Williams*, 146 Tenn. 38, 44, 236 S.W. 938, 940.

The reference in the foregoing to "worse financial situation" does not refer to a worse situation of net worth or of income where, as in the present case the income and net worth are more than needed to provide for the spouse according to the standards of living established and maintained during the marriage. The intended meaning of "worse financial situation" is a financial situation which would not provide a continuation of the scale of living, or the comforts of life which the wronged spouse had enjoyed during the marriage and which were reasonably to be anticipated if the wrongful conduct of the guilty spouse had not terminated the marriage by misconduct.

Although income and net worth are interconnected and, to some degree, interdependent, they deserve separate consideration in a divorce case. The equitable division of joint property under TCA § 36-4-121 is designed to preserve the property rights (i.e. the net worth) of the wronged spouse.

TCA § 36-5-101 provides for "support of spouse". Subsection (d) of § 36-5-101 provides the 11 criteria for determining the amount of support, among which are:

Standard of living established during the marriage.

Duration of the marriage.

The needs of the wronged spouse.

The ability of each spouse to provide those needs from property awarded under § 36-4-121.

Applied to the present case, § 36-5-101 requires that an amount of income be ascertained which will provide for the wife to live in the manner to which she became accustomed during the marriage. From this amount should be subtracted her reasonably anticipated income from her own endeavors and from her property, including that awarded to her under § 36-4-121. The result of the subtraction will be the amount by which the husband is obligated to supplement the income of his wife to the extent of his ability (and his ability is adequate). Although § 36-5-101 was not in effect at the time of the decree in this case, its provisions noted above were the controlling law by the decisions of the Courts prior to the decree. See authorities annotated under § 36-5-101, section 12.

The only mention of alimony in the memorandum of the Trial Judge is as follows:

The Court now addresses the question of alimony *in solido*. This is not a case where the Court deems that punishment is appropriate in an award of alimony. The law favors an *in solido* award of alimony where such is adequate. *Brown v. Brown*, 156 Tenn. 619, 626, 4 S.W.2d 345; *Ligon v. Ligon*, 556 S.W.2d 763

(Tenn.App.1977); *Spalding v. Spalding*, 597 S.W.2d 739 (Tenn.App.1980). The Court finds it appropriate to award the home to Mrs. Duncan as alimony *in solido* as well as Mr. Duncan's interest in the furnishings in said home, with the exception of the articles sought by Mr. Duncan as shown on Exhibit 40. Those articles are awarded to Mr. Duncan. Hereafter Mrs. Duncan will be responsible for the debt against the home.

The house on Belton Drive was found by the Trial Judge to be worth $155,110. Although the Memorandum of the Trial Judge mentions a "debt against the home", it does not indicate the amount of the debt. The briefs of both parties state that the $155,110 value was the "net value of the equity". Appellee's brief states that the debt was about $5,000.00, without citation to the record.

It thus appears that the Trial Court awarded one half of $155,110, or $77,555 as alimony in solido and no alimony in futuro.

■ Unfortunately, appellant's brief does not enlighten this Court as to the needs of appellant in respect to maintaining her standards of living. This Court is not obligated to search through 1098 pages of testimony for evidence of the cost of maintaining the appellant. *Zang v. Leonard*, Tenn.App.1982, 643 S.W.2d 657, *Schoen v. J.C. Bradford & Co.*, Tenn.App.1982, 642 S.W.2d 420.

Evidence cited by appellee shows that, prior to the division of marital property and award of alimony in solido, appellant's income was $69,484 per year or $5,790 per month. Appellant does not challenge these figures by reply brief. Assuming that the half interest in the home, awarded as alimony in solido, did not increase the income of appellant, the cash and one half interest in a $105,000 farm, received in lieu of stock, may reasonably be expected to produce some income.

■ Where the wronged spouse has income in excess of $5,000 per month, this Court cannot assume that her needs exceed this amount.

■ In this situation, there is no basis to consider the need of alimony in futuro or increase in alimony in solido.

Appellant next complains that:

The Trial Court erred in failing to assess payment of attorney's fees to Mrs. Duncan's attorneys from Mr. Duncan under the evidence presented at the trial.

Appellant cites "the certified record filed with (her) Rule 7 Motion" as evidence of her obligation to pay $20,000 in attorneys fees. The citation is to a transcript of testimony the pages of which are numbered 234, 235 and 319–353, a cursory examination of which does not disclose any evidence of obligation for attorney fees.

Appellants' brief also cites "TR 28–37" which purports to be an affidavit of appellant's counsel of 276.5 hours of service for which his charge is $41,475, of which $20,000 has been paid by appellant.

■ The record shows that appellant is possessed of adequate property and income to pay for whatever legal services she has received in this case. There is therefore no occasion for awarding her additional alimony to enable her to compensate her attorneys. *Ligon v. Ligon*, Tenn.App.1977, 556 S.W.2d 763.

Appellant's final complaint is:

The Trial Court erred in granting to Mr. Duncan items of personal property requested by Mr. Duncan scheduled on trial exhibit 30.

Appellant's brief makes specific reference to only two groups of items.

The first is "Heirloom Jewelry" consisting of two rings worn by appellant's father, one being his wedding ring and the other being a diamond ring, both of which were worn by appellant's father during his lifetime and were inherited by appellant's mother who permitted appellant to give these rings to appellee. Appellee does not seriously controvert the propriety of requiring the return of these rings, contending only that he did not demand the return of jewelry he gave appellant.

In view of the strong sentiment attached to these rings by appellant, this Court finds that they should be returned to appellant.

The other items requested by appellant are photographs of the children which are identified as "item 5 in Trial Exhibit 30". Said item reads as follows:

One-half of photographs and portraits of immediate family members and negatives for remaining photographs; all photographs of Mr. Duncan's mother and father, including the framed photograph of Mr. Duncan's father and mother hanging in the basement and all photographs of other members of members of his family; framed enlarged photograph or portrait of Joe Duncan, Jr. in CMA uniform; framed enlarged photograph or portrait of Georgia Duncan in green dress and similar photograph or portrait of Becky Duncan if such exists.

The foregoing description is too nebulous and uncertain to form the basis of a court order.

However, appellee's brief states:

Insofar as the family photographs are concerned, Mr. Duncan has always wanted and intended that she receive copies of pictures. After all, he and Mrs. Duncan participated equally in the care and nurture of the children.

It hardly seems necessary to pronounce a court order to obtain performance of the declared intentions of appellee. However, for the record, this Court will endeavor to do so.

The decree of the Trial Court is modified to require that appellee return to appellant the two rings which formerly belonged to appellant's father and to deliver to appellant copies of pictures as offered on page 26 of appellee's brief. As modified, the decree of the Trial Court is affirmed.

In its discretion, this Court taxes one half of the costs of this appeal against each party.

Appellant's "Rule 7 Motion" (for alimony pending appeal) is overruled.

The cause is remanded for any further necessary proceedings.

Modified and Remanded.

LEWIS and KOCH, JJ., concur.