IN THE COURT OF APPEALS OF TENNESSEE

FILED

March 4, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| DOROTHY LOUISE BECK, | ) C/A NO. 03A01-9601-CV-00023 |
| | ) McMINN COUNTY CIRCUIT COURT |
| Plaintiff-Appellee, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) HONORABLE JOHN B. HAGLER, |
| | ) JUDGE |
| | ) |
| | ) |
| | ) |
| WENDELL LEE BECK, | ) AFFIRMED IN PART |
| | ) VACATED IN PART |
| Defendant-Appellant.) | REMANDED WITH INSTRUCTIONS |

PERRY P. PAINE, JR. and H. ALLEN BRAY of PAINE, GARRETT & BRAY, Maryville, for Appellant

H. CHRIS TREW of HIGGINS, BIDDLE, CHESTER & TREW, Athens, for Appellee

O P I N I O N

Susano, J.

This is a divorce case. The lower court's judgment dissolved a marriage that had endured, tumultuously at times, for over 29 years. The trial judge granted the 46-year old plaintiff, Dorothy Louise Beck (Wife), a divorce on the ground of adultery; awarded her custody of the parties' two minor children[1]; established the child support obligation of the 47-year-old defendant, Wendell Lee Beck (Husband), at $300 per month; valued the parties' net marital estate at $372,040, which he divided equally between them; and awarded Wife alimony *in solido* of $25,000 to be paid out of Husband's share of the proceeds from the auction sale of a portion of the parties' Englewood farm. Husband appeals, raising issues that present the following questions:

> 1. Does the evidence in the record preponderate against the trial court's finding that Wife was entitled to an absolute divorce on the ground of adultery?
>
> 2. Did the trial court abuse its discretion in dividing the parties' marital property?
>
> 3. Did the trial court abuse its discretion in awarding Wife $25,000 alimony *in solido*?

I

Our review of this non-jury case is *de novo*; however, the record comes to us accompanied by a presumption of correctness that we must honor unless the evidence preponderates against the trial court's findings. T.R.A.P. 13(d); ***Union***

---

[1] The parties had four children, two of whom are now emancipated by age. The two minor children, both boys, were 12 and 16 years old respectively at the time of trial.

*Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993);

*Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn. App. 1992).

Both of the parties sought a divorce. The defendant admitted that he had engaged in an adulterous relationship during the marriage. He attempted to justify his conduct by implying the plaintiff was guilty of like conduct[2]. He also testified to other perceived shortcomings of Wife. Much of his testimony and the testimony of others supporting him were disputed by Wife. The witnesses' credibility was an issue for the trial judge that he had to evaluate in order to decide whether a divorce was justified by the proof, and, if so, to whom it should be granted. Generally speaking, credibility of witnesses is for the trial court. *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. App. 1990); *Brown v. Weik*, 725 S.W.2d 938, 946 (Tenn. App. 1983).

In this case, we are not in a position, based on a "cold" record, to second-guess the trial judge's credibility-driven determination that Wife, and not Husband, was entitled to a grant of absolute divorce. In any event, our *de novo* review persuades us that the evidence does not preponderate against the trial court's findings regarding the issue of divorce. The appellant's first issue is found to be without merit.

II

The trial court determined that the parties' total net marital estate was properly valued at $372,040. One of the

---

[2]The trial judge expressly found to the contrary.

3

assets "in the mix" was a farm in Englewood that contained between 209 and 246 acres[3]. The trial court found that the Englewood farm had a gross market value of $250,700. The evidence does not preponderate against this finding--a finding that is not challenged by Husband. What Husband does challenge is the trial court's determination that the Englewood farm should initially be allocated to Wife with an assigned *net* value of $197,700. Husband argues that the trial court should not have assigned this asset to Wife at a value that takes into account an admitted first mortgage indebtedness of $53,000. Under the unique circumstances of this case, we agree with Husband.

During the parties' marriage, they borrowed money from First Citizens Bank for their daughter's use in finishing her house. A deed of trust was placed against 25 acres of the Englewood farm to secure this indebtedness. Apparently, neither the daughter nor her husband signed the note to the bank; however, the parties to this divorce action acknowledged at trial that it was agreed between the parties and their daughter that she would make the payments on that obligation; that all of the note payments to the date of trial had been made by the daughter; and that the note had never been in default.

It is clear that the obligation in question--the balance of which was $53,000 at the time of trial--was a real obligation of the parties. They signed the note and it was secured by a small portion of their jointly-owned farm. No one

---

[3]The testimony was that the parties' deed called for 209 acres while the tax map reflected multiple tracts containing 246 acres.

else was obligated on the note.  It is clear that this note must be addressed in this case; however, we do not believe that this obligation should be disposed of based upon the assumption that Wife will be called upon to satisfy this debt.  More than likely, given the history of this obligation, neither of the parties will be called upon to pay this debt.

We believe the trial court abused its discretion[4] in that the evidence preponderates against the trial court's implicit finding that Wife will ultimately be burdened with repaying this $53,000 obligation.  The trial court's finding is hereby vacated.  On remand, the trial court will enter an order modifying its judgment so as to award the Englewood farm to Wife at an assigned value of $250,700, its gross value.  That order will also provide that, as between the parties, each will be responsible for half of the remaining balance of the obligation to the bank in the event their daughter does not pay it.  The order will also provide that each party will indemnify the other party against any loss arising out of the portion of the debt that the latter party is not obligated to pay under the terms of this opinion.  We believe that this resolution is the fair way to handle this particular liability.

---

[4]The term "abuse of discretion" was defined by the Supreme Court in another context in the case of *Foster v. Amcon International, Inc.*, 621 S.W.2d 142, 145 (Tenn. 1981):

> The term has too often implied intentional wrong, bad faith or misconduct on the part of a trial judge.  In our view, "abuse of discretion" was never intended to carry such a meaning, nor to reflect upon the trial judge in any disparaging manner.  To us the phrase simply meant an erroneous conclusion or judgment on the part of the trial judge--a conclusion that was clearly against logic (or reason) and not justified.

The trial court determined that an equitable distribution of property in this case was an equal division. The evidence does not preponderate against that finding; however, the adjustment that we have made in the trial court's division of that property requires that we further modify the trial court's judgment.

In dividing the parties' property, the trial court found that 70 acres of the Englewood farm initially allocated to Wife should be auctioned to equalize the distribution of property between the parties. We do not disagree with this approach; but obviously, the trial court's judgment of equalization will have to reflect that the total net marital assets to be distributed, ignoring the $53,000 debt, are worth $425,040 instead of the $372,040 found by the trial court. The following is a comparison between the distribution found by the trial court and that found by this court, before the adjustment required to accommodate the auction sale of the 70 acres off of the Englewood farm:

|  | By Trial Court | By Court of Appeals |
|---|---|---|
| Distributed to Wife | $232,290[5] | $285,290[6] |
| Distributed to Husband | 139,750 | 139,750 |
|  | $372,040[7] | $425,040 |
|  | ======== | ======== |

[5]Both of the "distributed to Wife" figures include the 70 acre tract to be auctioned.

[6]See footnote 6 of this opinion.

[7]The trial court equalized this disparity in its decree when it directed the disposition of the net proceeds from the 70 acre tract.

6

The trial court anticipated that the 70 acres would bring $1,000 per acre. He directed that $1,439 in expenses[8], along with the expenses of the auction, should be paid from the proceeds of the auction sale. We agree. We further believe that the judgment should be modified to provide that Husband should arrange for the auction of the 70 acres since it is clear that all or most of the net proceeds from the sale will go to him. If the auction sale produces net proceeds that result in Husband getting less than half of the net marital assets, he shall be entitled to all of the net proceeds[9]. On the other hand, if the auction sale produces a bid that results in a disproportionate share of the net assets going to Husband, Wife shall be entitled to share in those proceeds to the extent necessary to equalize the division of marital assets. The judgment below will be modified by the trial court to reflect these changes to the division of property decreed by the trial court.

III

Husband's final issue brings into question the trial court's decree that Husband pay Wife $25,000 alimony *in solido* when the auction sale of the 70 acres is finalized. We believe the trial court abused its discretion in making this award because the evidence preponderates against the trial court's implicit findings supporting it.

---

[8]The $1,439 represents court reporter charges and a real estate appraiser's fee.

[9]We realize that this portion of our opinion may result in Husband getting somewhat less than half of the net marital assets; however, we believe that the division will still be equitable, given the facts of this case.

7

T.C.A. § 36-5-101(d)(1)(A)-(L) sets forth the factors to be considered by a trial court in its alimony determination. Of these factors, the three most important are the needs of the requesting party, the resources of the other spouse, and the relative fault of the parties. *Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. App. 1994).

In the instant case, there was no proof of Wife's current needs. Nowhere in the 36 exhibits and the three volumes of transcript is there an affidavit of expenses or testimony regarding Wife's anticipated monthly outlays for food, clothing, telephone, health insurance, gasoline for her car, utilities, and the like. Neither of the parties offered an analysis of the other party's business or personal checking account. While there is evidence in the record indicating that each of the parties owned and operated a florist shop, there is no credible, helpful evidence of the spendable funds per month spun off by either of these businesses.

Wife testified that she is currently receiving $210 per month from the rental of some of her farm land. She also receives $100 per month from the rental of a house formerly occupied by her parents. Each of the parties has a tobacco allotment. It is not clear from the record how much each of the parties currently receives from that allotment.

Wife testified that she paid all of the family's living expenses after Husband moved out in May, 1989. Offsetting this testimony somewhat was testimony that Husband sent Wife one check

8

for $150 and that he paid $3,508.41 on past-due taxes on the Englewood farm; however, there was evidence that Wife had access to unneeded funds because she purchased an automobile for one of her emancipated daughters.

Wife argues that the fact she did not have the funds to pay the property taxes coupled with the fact that Husband had to redeem the Englewood farm shows that she needed alimony and that Husband had the resources to provide alimony. She also relies upon the fact that on one occasion she was without gas for heating purposes, and the further fact that she passed "insufficient funds" checks after the parties separated. All of this proof[10] is certainly some indication that she had a need at the time of the incidents; but this was not the issue before the trial court. The real issue was the extent of her *current* needs --her needs at the time of trial. There is simply no proof before us that Wife had needs that were not being funded by her income from rentals, her tobacco allotment, and her florist shop. We cannot speculate on these matters. Further, we cannot award alimony beyond an individual's demonstrated needs. Alimony in excess of need is punitive in nature. *Cf*. **Duncan v. Duncan**, 686 S.W.2d 568, 571 (Tenn. App. 1984). Alimony is not designed to punish an errant spouse. *Id*.

Accordingly, we find that the trial court abused its discretion when it awarded Wife $25,000 alimony *in solido*. The evidence preponderates against that award. It is hereby vacated.

---

[10]The "gas" incident occurred when the now emancipated children "were younger." The record does not indicate when Wife passed "bad" checks. The taxes were for a number of years. All of the incidents relied upon by Wife are more anecdotal than substantive proof of a *current* need for support.

9

On remand, the trial court will enter an order deleting its $25,000 alimony *in solido* award.

Except as vacated herein, the judgment of the trial court is hereby affirmed. This case is remanded to the trial court for further proceedings consistent with this opinion and for collection of costs assessed below. Exercising our discretion, we tax the costs on appeal one-half to each party.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Don T. McMurray, J.