# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

MARIE PUCKETT, Indiv. & as Admrx. )
Of the Estate of Robert E. Harrison, )
deceased, ROBERT RONALD )
HARRISON, TRINA DEE MANSFIELD, )
RELMA LOUISE KESTERSON, )
STEPHEN DANIEL HARRISON, )
NELLIE LUCILLE COOK and )
JOSEPH DANIEL HARRISON, )
                               )
          Petitioners/Appellants, ) **Weakley Chancery No. 13641**
                               )
VS. ) **Appeal No. 02A01-9708-CH-00184**
                               )
PALMA DIANE HARRISON and )
TAMMIE HARRISON KINCER, )
                               )
          Respondents/Appellees. )

APPEAL FROM THE CHANCERY COURT OF WEAKLEY COUNTY
AT DRESDEN, TENNESSEE
THE HONORABLE WILLIAM MICHAEL MALOAN, CHANCELLOR

**H. MAX SPEIGHT**
Dresden, Tennessee
Attorney for Appellants

**JAMES H. BRADBERRY**
Dresden, Tennessee
Attorney for Appellee

**AFFIRMED**

                                       **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**_____

_____This appeal involves a divorced couple who decided to forego certain provisions in

their marital dissolution agreement concerning ownership of the marital residence without the consultation of counsel or the court. This matter began as a divorce action in the Chancery Court of Weakley County, Tennessee, and was styled: Palma Diane Harrison vs. Robert E. Harrison. Robert ("decedent") and Palma Diane Harrison ("appellee") entered into a Marital Dissolution Agreement on June 27, 1994. The divorce was granted on September 12, 1994, and the final decree of divorce incorporated the Marital Dissolution Agreement therein. In pertinent part, the Marital Dissolution Agreement provided:

> Now, therefore, it is mutually agreed by and between the parties in consideration of the mutual covenants and agreements hereinafter contained as follows:
> 4. That the wife shall be entitled to the right to possess and use the property described below until her death or remarriage, including water rights on the well:
>
> > BEGINNING at a stake at the south east corner of the Eagle Hill School house land, runs west 8-2/3 poles to a stake at the northwest corner of the store lot; thence south 12 poles to a stake; thence east 8-2/3 poles to the public road; thence north 12 poles to the beginning, containing by estimation one acre, more or less. And being the same property conveyed to Robert E. Harrison by deed of Wayne D. Stoker, *et ux*, dated March 27, 1972, and recorded March 27, 1972, in Deed Book 146, Page 384, Register's Office of Weakley County, Tennessee.
>
> 5. That the husband shall be entitled to possession of all other property, and he shall be entitled to ownership of all real estate.
>
> 11. All parties agree to execute any document which may be or become necessary to effectuate this agreement, including but not limited to Quitclaim Deeds and Titles.

Thereafter, on November 23, 1994, decedent and appellee came to the law offices of James Bradberry wherein Beverly Skoda was employed. Decedent requested that Mrs. Skoda prepare a deed of trust on the property that was formerly the residence of appellee and himself. He wanted the trust deed to be given as security for a bond which he desired to have created. He importuned Mrs. Skoda to run a title search in preparation of drafting the deed of trust. After running the title search, Mrs. Skoda learned that the property in question was titled in the names of both appellee and decedent. After further

2

reviewing the Chancery Court records pertaining to appellee and decedent's divorce, Mrs. Skoda advised Mr. Harrison of his right to have appellee quitclaim her interest in the subject property over to him. In response to Mrs. Skoda's admonition, decedent insisted things were, indeed, just how he wanted them to be and that he wanted nothing changed. That same day, the trust deed was executed by both appellee and decedent.

Some time later, decedent discovered that he was terminally ill with cancer. Following this discovery, decedent had several conversations with family members and other acquaintances in which he communicated that he had everything just the way he wanted it and desired no changes since appellee had worked for the subject property just as he had. In addition to Mrs. Skoda, decedent had these conversations with his brother, Walter Harrison; his sister-in-law, Fay Darnell; his sister-in-law Pat Harrison; and Jane Dublin.

No deeds were ever prepared which indicated a transfer of the interest of appellee in the subject property to decedent. Decedent died on February 16, 1995.

Decedent's estate was probated and Marie Puckett, daughter of decedent, was appointed as Administratrix. On January 25, 1996, a petition was filed by the Administratrix to order appellee to comply with the provision in the Marital Dissolution Agreement or to hold her in contempt. Joining in this petition was Robert Ronald Harrison, James E. Harrison, Trina Mansfield, Relma Kesterson, Stephen Harrison, Nellie Cook, and Joseph Harrison. An answer to this petition was filed by appellee on February 23, 1996. This matter came to trial on February 5, 1997. Final judgment in this matter was entered on March 26, 1997, wherein the trial court found from the proof that decedent had reached a decision on his own or with appellee that he would not enforce his right to receive a quitclaim deed from appellee to the subject property. Thus, the trial court ruled that decedent and appellee now held the property as tenants in common. Particularly, the trial court found that without the execution of a quitclaim deed transferring the said interest of appellee to decedent, appellee remained one-half owner of said property.

3

On appeal, appellants raise two issues for review by this court:

> 1. Whether the property division provisions of a divorce decree as incorporated via a Marital Dissolution Agreement can be modified by the original parties?

> 2. Whether the Statute of Frauds applies to the introduction of evidence claiming a gift or other oral disposition of real estate?

Inasmuch as this case was tried by the trial court sitting without a jury, this Court's review on appeal is governed by Tennessee Rule of Appellate Procedure 13(d), which directs us to review the case *de novo*. *Roberts v. Robertson County Bd. of Educ.*, 692 S.W.2d 863, 865 (Tenn. Ct. App. 1985); *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 300 (Tenn. Ct. App. 1984). In conducting a *de novo* review of the record below, however, this Court must presume that the trial court's findings of fact are correct. Under this standard of review, we must affirm the trial court's decision unless the trial court committed an error of law affecting the result or unless the evidence preponderates against the trial court's findings. *Roberts*, 692 S.W.2d at 865.

Appellants make two arguments against the judgment of the trial court: first, that a property division provision of a divorce decree cannot be modified by the original parties, and second, that the Statute of Frauds applies to the introduction of evidence claiming a gift or other oral disposition of real estate. We find that both arguments lack substantial merit.

The primary cause of the present dispute is the Harrisons' uncounseled decision to ignore their property settlement agreement in their MDA. After their divorce, they took it upon themselves to depart from their original agreement that had been approved by the trial court.

A marital dissolution agreement, is essentially contractual. It is not binding on the court. *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982); *Youree v. Youree*, 217 Tenn. 53, 58, 394 S.W.2d 869, 871 (1965). However, it loses its contractual character and becomes binding on the parties once the trial court approves it and incorporates it into a

4

final decree. *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975); *Gaines v. Gaines*, 599 S.W.2d 561, 565 (Tenn. Ct. App. 1980). A final decree embodying a property settlement agreement must be respected and followed like any other court order.

Parties who ignore their court-approved property settlement agreement do so at their peril. An individual party who unilaterally chooses to ignore the agreement may be held in contempt. When both parties ignore their property settlement agreement, the courts will reorder their rights and obligations in light of both the terms of their original agreement and their post-divorce agreements or conduct. *See Mitchell v. Mitchell*, 1993 WL 33765 (Tenn. Ct. App. Feb. 10, 1993).

Here, the trial court had multiple witnesses before it testifying that decedent appellee had decided to forego the property settlement provisions in the MDA and allow appellee to retain her one-half interest in the subject property.

Particularly, Mrs. Beverly Skoda testified that decedent and appellee came into her office wherein the following conversation took place:

> I reminded him that the quitclaim deeds from Diane had not been done and that both their names, were, in effect, on a deed, that they owned it together, and I told him I could prepare those if he would like to while we were waiting for Mrs. Harrison to come, and he said, "No, it's just like I want it. I don't want anything changed."

Walter Harrison, brother of decedent testified in pertinent part:

> Q. And what statements did Mr. Harrison make to you about the property and the status of the property at that time?
>
> A. We talked about it two or three different times. An he would just tell me, you know, that he had everything fixed just the way he wanted it and said Diane, said, she--well, she--she worked for it and helped pay for everything just like I did and it was hers as much as it was mine.

Pat Harrison, sister-in-law of decedent, testified that decedent stated to her that he had everything just how he wanted it.

5

Fay Darnell, sister of appellee, testified that in part:

> Q. Did you and Mr. Harrison have any conversations about the real property that was owned by Mr. Harrison?
>
> A. Yes.
>
> Q. And would you relate what that conversation was?
>
> A. I said something about I guess y'all will be splitting up your property now. And he said, "No," said, "I'm going to keep it sitting--I want it left just like it is."

Jane Dublin, relative of appellee, attended church with decedent. She testified in part as follows:

> Q. And did you have an opportunity to visit with her former husband, Robert Harrison, prior to his death?
>
> A. Yes, I did. We were close. We attended church together.
>
> Q. Okay. Did you have conversations with Mr. Harrison about the property that he owned?
>
> A. To the point of I asked him did he have everything like he wanted it stating about the house and everything. And he said, yes, he did have it fixed like he wanted it.
>
> Q. Did you know what he meant when he said fixed like he wanted it? Do you know what the status of the property was at that time?
>
> A. Yeah. I understand that the deed was still in his name and in Diane's name, and he stated that she had worked and helped pay for it.

On appeal from a judgment rendered by a court without a jury, any conflict in testimony requiring a determination of the credibility of witnesses is for the trial court, and this determination is accorded great weight by this Court unless other real evidence compels a contrary conclusion. *Linder v. Little*, 490 S.W.2d 717 (Tenn. Ct. App. 1972); *See also Duncan v. Duncan*, 686 S.W.2d 568 (Tenn. Ct. App. 1985); *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297 (Tenn. Ct. App. 1984). The findings of the trial court in a non-jury case are entitled to great weight where the trial court saw and heard the witnesses and observed their manner and demeanor on the stand and was therefore in a much better position than the appellate court to judge the weight and value of their testimony. *Smith v. Hooper*, 59 Tenn. App. 167, 438 S.W.2d 765 (Tenn. Ct. App. 1968); *Duncan v. Duncan*,

6

686 S.W.2d 568 (Tenn. Ct. App. 1985).

We recognize that the evidence concerning whether decedent decided to forego certain provisions in the MDA thereby waiving his right to have appellee quitclaim her intererst in their marital residence was disputed at trial. These conflicts required the trial judge to evaluate the credibility of the witnesses who appeared before him. He resolved these credibility issues in favor of appellee. Not having seen these witnesses in person, we are not in a position to say that he was wrong in his assessment of the witnesses' credibility. Considering the importance of credibility in this case, we cannot say that the evidence preponderates against the trial court's findings of fact supporting its conclusion that both decedent and appellee ignored the provisions of the MDA which resulted in decedent surrendering his rights to have appellee transfer to him her interest in the subject property thereby allowing the status of the property to remain unchanged. The trial court correctly reordered decedent and appellee's rights under the MDA in light of their conduct and the testimony of numerous witnesses.

Appellants further contend that even if there was an attempt bilaterally to modify this MDA, this agreement violates the Statute of Frauds as codified in Tenn. Code Ann. § 29-2-101 which states:

> (a) No action shall be brought:
> (4) Upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year; . . .

We disagree.

The Statute of Frauds is not applicable here since there was no attempt to transfer land or an interest therein. The only transaction taking place under the subsequent agreement was not a transfer at all, but a voluntary surrender on the part of decedent of his right to have appellee execute a transfer of her interest in the subject property to himself. The court is of the opinion that this takes the subsequent agreement outside the scope of the Statute of Frauds. Consequently, such subsequent conduct can be

7

established by parol evidence and from the conduct of the parties themselves.  In light of the conduct of decedent and appellee in failing to carry out certain property provisions of the MDA and in light of the testimony of several witnesses shedding light on decedent's intentions concerning the ownership of the subject property, it is the opinion of this court that the trial court's reordering of the decedent's and appellee's rights under the MDA was proper and supported by the evidence in the record.[1]

Accordingly, we affirm the judgment of the trial court.  Costs of this appeal are taxed to appellants, for which execution may issue if necessary.

 

 

HIGHERS, J.

CONCUR:

CRAWFORD, P.J., W.S.

LILLARD, J.

---

[1]In any event, if the Statute of Frauds had been applicable to the instant case, the evidence in the record evinces sufficient documentation of a subsequent agreement between decedent and appellee so as to rescue the agreement from application of the Statute of Frauds.  The December 9, 1994, trust deed shows that both decedent and appellee signed the trust deed thus indicating that both owned the subject property jointly.  This documentation surfaced after the trial court's entry of the final decree of divorce with the accompanying MDA property settlement provisions incorporated therein.