IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 2, 2001

# RAYMOND JAMES MUELLER v. DENISE LORETTA MUELLER

**Appeal from the Circuit Court for Williamson County**
**No. I-999341     Jeffrey S. Bivins, Judge**

---

**No. M2001-00098-COA-R3-CV - Filed November 30, 2001**

---

In this appeal of a divorce decree, the husband argues that the rehabilitative alimony awarded to the wife is excessive, and that his visitation schedule unnecessarily limits the time he can spend with his son. We affirm the award of rehabilitative alimony, but reduce its duration to three years. We also remand this case to the trial court for reconsideration of the visitation schedule.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Darlene Rebowe, Nashville, Tennessee, for the appellant, Raymond James Mueller.

Nathaniel H. Koenig, Nashville, Tennessee, for the appellee, Denise Loretta Mueller.

**OPINION**

## I. MARRIAGE AND DIVORCE

In 1992, Raymond James Mueller and Denise Loretta Mueller married in Michigan. Their marriage produced one child, Conner James Mueller, who was born on October 14, 1992. Mr. Mueller, an automotive designer by trade, had been hired by Saturn in 1987, and worked for that company during the entire course of the marriage. His wife worked for a Michigan shopping mall management company between 1980 and 1993.

The Muellers moved to Tennessee in 1993. Denise Mueller was offered a job at the Bellevue Mall (which was owned by the same company that had employed her in Michigan) but Ray Mueller urged her to stay home instead, to take care of their child. Both parents were very involved in the care and upbringing of their son, and each admitted that the other was a good parent.

Despite the evident joy that their child brought to both of them, the marriage could not really be called a happy one. One source of tension was their differing attitudes towards their extended families. Mr. Mueller was not very interested in being involved with any family members aside from his own wife and son. He had cut off contact with his own parents and his brother for years at a time, and he barely tolerated the presence of his wife's parents and siblings at family gatherings. But Ms. Mueller's relationship to her extended family was extremely important to her.

Sometime in 1999, the parties deemed themselves to have separated, even though they both continued to reside in their Brentwood home. Their continued proximity to each other during this difficult time led to worsening relations, to increased use of obscenities and foul language by Mr. Mueller, and finally, to two incidents in which he lost his temper and threatened over the phone to kill his wife.

On June 14, 1999, Mr. Mueller filed a Petition for Divorce. The grounds were irreconcilable differences and inappropriate marital conduct. He claimed that his wife had intentionally interfered with his relationship with Conner, a course of conduct that apparently did not begin until after the parties' separation. He asked the court to award him sole custody of Conner, child support, and an equitable portion of the marital property.

Mr. Mueller's petition began an extensive and prolonged course of legal wrangling between the parties, including a flood of motions and petitions which we do not feel obligated to discuss in detail. We will attempt to confine our discussion to the proceedings and orders that have the greatest bearing upon the issues on appeal.

On August 26, 1999, Denise Mueller filed her Answer and Counter-Claim to the Petition for Divorce. She admitted that there were irreconcilable differences between herself and her husband, claimed that he was guilty of inappropriate conduct towards her, and asked for temporary and permanent custody of Conner, child support, alimony, and attorney fees. Ray Mueller subsequently filed an Answer to the Counterclaim, which alleged that his wife's ill conduct towards him was a justifiable cause for any conduct of his that she complained of.

On September 30, 1999, the court filed an order in response to Ms. Mueller's Motion for Pendente Lite Support. The court stated that since the parties were residing together, there was no need to award the wife separate child support. Instead, the court asserted that it would "maintain the status quo with the current practice of the parties" by ordering Mr. Mueller to pay his wife pendente lite support of $1,050 per month, as well as mortgage and utility payments on the marital home. The husband was also enjoined "from using obscene or profane language in the presence of the parties' son or making derogatory remarks about the mother in the child's presence."

On December 17, 1999, Denise Mueller filed a Petition for an Order of Protection. She cited telephone threats that Mr. Mueller had made against her on December 16 and 17, and alleged that

she was in fear for her life.[1]  The trial court granted the order.  In a subsequent motion, Ms. Mueller claimed that she had not returned to the marital home after the filing of the Order of Protection because of fear for her own safety and that of her child.  She asked the court to order her husband to leave the marital home, to give her temporary custody of Conner, and to award child support.  In January of 2000, Ray Mueller left the marital home and moved into an apartment.  The court subsequently granted Denise Mueller temporary custody of Conner, and reiterated the support obligation it had stated in its pendente lite order.

The final hearing on the divorce was conducted on May 17, 2000.  By that time, Mr. Mueller had moderated his position, asking only that the court grant a divorce to both parties in accordance with Tenn. Code. Ann. § 36-4-129, and that he and his wife be awarded joint custody of their child.  He expressed remorse over losing his temper, but insisted he had been "set up" by his wife, who had thwarted his plan to take Conner to Michigan over the Christmas holidays, and then recorded the threatening phone calls that she knew would follow.

Following the hearing, the trial court issued a Memorandum Opinion and a Final Judgment, dismissing Ray Mueller's petition, and granting the divorce to Denise Mueller.  The court stated that the husband had been guilty of numerous acts of inappropriate marital conduct, including the threats to kill his wife, and "placing glue in the lock to Wife's bedroom door."  The court granted sole custody of Conner to Ms. Mueller, in part because of Mr. Mueller's inability to control his anger.  Mr. Mueller was granted "standard visitation," which was spelled out in some detail.

The court divided the marital property, which had a total value of about $450,000, awarding slightly more than half to Denise Mueller.  The wife's share included all the equity in the marital home, which had a value of about $112,000.  The court also ordered Mr. Mueller to pay $868 per month in child support, in accordance with the child support guidelines, as well as rehabilitative alimony of $1,800 per month for five years, and $10,000 for the wife's attorney fees and legal expenses.

Both parties subsequently filed extensive Motions to Alter or Amend the Final Judgment.  Ray Mueller's Motion to Alter or Amend asked the court, among other things, to increase his visitation with Conner, and to find that the amount of rehabilitative alimony previously ordered was contrary to the law as it applies to the facts and evidence presented in this case.  Denise Miller also filed a Petition for Civil and Criminal Contempt against her husband, and he responded with his own Petition for Civil and Criminal Contempt.  Both petitions alleged various failures to comply with the requirements of the court's final judgment.

---

[1]To counter Ms. Mueller's allegations that her husband was dangerous, Mr. Mueller had himself evaluated by Nashville psychiatrist Dr. William Kenner.  Dr. Kenner was called to the stand during a motion hearing on February 22, 2000, and he testified without reservations that Mr. Mueller did not pose a danger to himself, to Ms. Mueller, or to his son.

In an order filed on August 30, 2000, the trial court addressed some of the issues from the motions before it, but took the contempt questions under advisement. Among other things, the court stated that it was granting Mr. Mueller's motion to increase visitation, but a comparison of the language describing the visitation schedule in this order and in the final judgment shows there to be no difference between them. In a later order, the court reaffirmed the duration of the rehabilitative alimony, but reduced the amount to $1,500 per month for the first two years, and $1,200 per month for the remaining three years. Mr. Mueller appealed.

By the time of the hearings on the pending motions for contempt, many of the disputes between the parties had been resolved. Hopefully, this indicates that despite their substantial differences, the parties are capable of working together for the benefit of their only child.

## II. REHABILITATIVE ALIMONY

Our legislature has authorized the courts to order "payment of rehabilitative, temporary support and maintenance" to an economically disadvantaged spouse, and has declared it to be the preferred form of spousal support whenever rehabilitation is feasible. Tenn. Code Ann. § 36-5-101(d)(1). The statute also directs the court, when determining an alimony award, to consider all relevant factors, including,

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (C) The duration of the marriage;
> (D) The age and mental condition of each party;
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> (G) The separate assets of each party, both real and personal, tangible and intangible;
> (H) The provisions made with regard to the marital property as defined in § 36-4-121;
> (I) The standard of living of the parties established during the marriage;
> (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

-4-

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

In interpreting the statute, our courts have frequently stated that the most important factors to consider are the needs of the recipient and the obligor's ability to pay. *Varley v. Varley,* 934 S.W.2d 659 (Tenn. Ct. App. 1996); *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App.1993); *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. Ct. App.1984). Mr. Mueller argues that the amount of rehabilitative alimony ordered in the present case exceeds his ability to pay, and that it is excessive in light of the relatively brief duration of the marriage.

The trial court found that Mr. Mueller had a substantially greater earning capacity than his wife, $70,000 per year for him, as opposed to $25,000 per year for her. The proof also showed that the forty-five year old Ms. Mueller was in good health, and that she had held a shopping mall job in Michigan that paid $13.20 per hour. She was offered a similar job in Tennessee, but did not take it because Mr. Mueller wished her to devote herself full-time to raising their son. In light of Ms. Mueller's ability to earn a reasonable living, and the long interval since her last full-time job, she appears to be a suitable candidate for rehabilitative alimony.

The purpose of rehabilitative alimony is to encourage the recipient to become and remain self-sufficient. *Burlew v. Burlew*, 40 S.W.3d 465 (Tenn. 2001); *Anderton v. Anderton*, 988 S.W.2d 675 (Tenn. Ct. App. 1998). When this can be accomplished through additional training or education, then the time and cost requirements involved may be a factor in determining the appropriate duration and magnitude of the award. See, for example, *Watters v. Watters*, 959 S.W.2d 585 (Tenn. Ct. App. 1997) and *Garfinkel v. Garfinkel,* 945 S.W.2d 744 (Tenn. Ct. App. 1996). When there is no plan for additional education or training, then rehabilitative alimony serves as a source of temporary income during a period of adjustment and effort, while the dependent spouse attempts to become partially or totally self-sufficient. *See Loria v. Loria*, 952 S.W.2d 836 (Tenn. Ct. App. 1997).

During the hearing of May 17, 2000, Ms. Mueller expressed an interest in returning to college (she had taken a few courses prior to 1992). She spoke of possibly earning a degree and a teaching credential, so that she could work only the hours when her son was in school, but she had not made a decision, and said she wanted to explore some other options. Under questioning, she admitted that she had not filled out any applications for schooling, or even looked at what different schools might have to offer, and how much they might cost.

She also had not interviewed with any potential employer, or applied for any job. At the time of trial, she was earning $65 per month as a daycare worker. While the apparent lack of urgency in regard to financial matters is probably a good thing in some respects, it appears to us that Mr. Mueller's consistent support of his wife has somewhat reduced her motivation to become self-sufficient.

After the parties separated, Mr. Mueller continued to pay the mortgage and all utility bills, and deposited $1,050 monthly into his wife's account, for food, clothing, recreation, gifts, and other items. In the trial court's final order, this obligation was replaced by the alimony award, and by the required child support payment of $868 monthly.

The parties had accumulated a substantial estate during the course of the marriage, in part because of the husband's careful stewardship of their financial resources, and in part because of some extraordinary good luck in the stock market. Aside from the marital home, the wife was awarded a $22,000 share in a money market account, stock worth $47,264, one half of the husband's 401(k), which had a total fair market value of $66,295, and her own IRA, worth $2,100. The trial court stated that the award to the wife had a total value of $226,257.

We note that Tenn. Code Ann. § 36-5-101(d)(1)(K), allows the trial court to take fault into account when setting spousal support. However, support decisions are not intended to be punitive. *See Duncan v. Duncan*, 686 S.W.2d 568, 571 (Tenn. Ct. App.1984). In the present case, the trial court appropriately found Mr. Mueller to be at fault for the break-up of the marriage, and cited his excessive use of obscenities, his failure to control his temper, and some childish stunts, such as putting glue in the lock to his wife's bedroom door, and allowing a pet bird to escape. But the attempt by Ms. Mueller's attorney to characterize him as a criminal and a potential murderer appears to be far from the mark. We do not believe that Mr. Mueller's fault should have much effect on the alimony award.

In light of the assets awarded to Denise Mueller in the property division, her ability to earn a reasonable income without additional training or education, and the relatively brief duration of the marriage, it appears inequitable to require Ray Mueller to pay rehabilitative alimony for a period in excess of the time it should take her to become self-sufficient. We therefore reduce the duration of the award to three years.

Mr. Mueller also challenges the amount of the alimony award on the ground that it exceeds his ability to pay. We have examined with some care the statements of income and expenses that were submitted by the parties prior to the final hearing, and we believe Mr. Mueller will be able to pay the required alimony and child support, and to meet his own monthly expenses from his $5,678 salary. To do so he may have to temporarily suspend the monthly unmatched $500 contribution he has been accustomed to adding to his 401(k) retirement plan. We accordingly affirm the alimony award of $1,500 per month for two years, and one year of additional alimony at $1,200 per month.

### III. Visitation

Ray Mueller stated that to him, the most important part of the divorce case was preserving his relationship with his son. He testified at length as to his involvement in Conner's life, including his work as a coach on his son's teams, and his participation in parent-teacher conferences and school outings.

In its final decree, the trial court awarded Mr. Mueller what it called "standard visitation." The actual schedule included every other weekend from 5:00 p.m. on Friday to 5:00 p.m. on Sunday, four weeks in the summer, one week during Christmas holidays, and four days every other Thanksgiving holiday.

In his Motion to Alter or Amend, Mr. Mueller had submitted a proposed visitation schedule which requested several additional holidays. These included Memorial Day, July 4, Labor Day, and Father's Day. He also asked for weeknight visitation during the school year from Tuesday afternoon to Thursday morning on alternating weeks. Mr. Mueller notes that his wife offered no testimony in opposition to his proposed holiday visitation, and that although she opposed the proposed weeknight visitation, she gave no reason for her opposition.

We think Mr. Mueller's point is well taken. It is also relevant that the trial court stated that it was granting his motion to alter or amend the visitation schedule, but that the schedule following this statement did not differ from the schedule in the Final Order. It therefore seems appropriate to remand the question of visitation to the trial court for further proof, and further consideration.

**IV.**

The judgment of the trial court is modified to reduce the award of rehabilitative alimony from five years to three years. This case is also remanded to the trial court for further consideration of the father's visitation schedule. Remand this cause to the Circuit Court of Williamson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellee, Denise Mueller.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.