## IN THE COURT OF APPEALS OF TENNESSEE

## EASTERN SECTION AT KNOXVILLE

PATRICIA BROADWELL,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiff/Appellee　　　　)　　HAMILTON CIRCUIT
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　NO.  03A01-9607-CV-00242
THOMAS MICHAEL BROADWELL,　　)
　　　　　　　　　　　　　　　　)
　　　　Defendant/Appellant　　　)　　AFFIRMED as MODIFIED


Andrew Berke, Chattanooga, For the Appellant.

Jacqueline E. Schulten, Chattanooga, For the Appellee.


## O P I N I O N

_____INMAN, Senior Judge


This is a domestic relations case.  The issues are whether the evidence preponderates against (1) an award of alimony *in futuro* to the appellee, (2) the finding that an alleged loan to the parties was intended as a gift, (3) an award of attorney's fees.

The appellant is 45-years-old.  He holds bachelor's and master's degrees and is a pharmaceutical salesman.  He and the appellee were married when she was 17, and they have two children, both of age.  He is presently unemployed due to his refusal to accept a transfer from Chattanooga to Knoxville or Nashville.

In happier times, the parties enjoyed a lifestyle commensurate with his income of $75,000.00 annually, and her income from secretarial work of $19,000.00.  Because of the collapse of their marriage, they agreed that their residence should be sold, with the proceeds equally divided.  This was accomplished, but the appellant's share of the proceeds was ordered held in escrow as security for his decretal obligations.  He has since moved to Texas and makes his home with his mother.

The Court ordered the appellant to pay $1500.00 per month to the appellee as alimony *in futuro*. He complains that because he is unemployed and without income, the court has ordered him to do the impossible; to this argument, the appellee responds that the appellant's former employer, Glaxo Wellcome, offered him continued employment in the Tennessee location, but that he refused these offers because he wanted to stay in Chattanooga. His protestations of unemployment, his efforts made to secure employment, the sincerity of his quest, and the depth of his ambition did not impress the trial judge. Notable, too, is the fact that notwithstanding his professed determination to remain in the Chattanooga area, he now resides in Texas and admits that he has no impairments which would be preclusive of employment.

Appellant also complains of the nature of the alimony award. He argues that his former spouse is capable of rehabilitation and, thus, should have been awarded alimony in a lesser amount. The trial judge found that the inappropriate conduct of the appellant destroyed the marriage, and that the appellee should continue to enjoy the lifestyle previously obtaining, superimposed upon the fact that she has no advanced education, is qualified only for secretarial work and assisted the appellant in attaining his master's degree. *See Duncan v. Duncan*, 686 S.W.2d 568 (Tenn. Ct. App. 1984). While rehabilitative alimony is preferred, *see* T.C.A. 36-5-101(d)(1); *Storey v. Storey*, 835 S.W.2d 593 (Tenn. Ct. App. 1992), we cannot say that the evidence preponderates against the finding of the trial court that upon consideration of all of the relevant factors prescribed by T.C.A. § 36-5-101(d), the rehabilitation of this economically disadvantaged appellee was not feasible. Our review is *de novo* on the record with the presumption that the trial court is correct unless the evidence otherwise preponderates. TENN. R. APP. P. 13(d).

Next, appellant argues that his mother loaned him and the appellee $49,000.00 when they ran short of funds required to construct their residence, but that the trial court ruled the transaction was a gift and, thus, not repayable. The evidence on this issue is rather meager, but we think the preponderance SUPPORTS the finding of the trial court.

On June 1, 1992, the parties jointly executed three promissory notes payable to Katherine S. Broadwell, aggregating $49,000.00, with interest, and payable one, two and three years from that date. These funds were used in the construction of the residence.

The appellee testified:

q.      The notes you saw this morning totaled how much, do you recall: 49,000?
A.      I think so.
Q.      All right. What was your understanding until you saw these notes; was it a gift, a loan or what?
A.      It started out as a loan. We had -- Tom had invested some money in the stock market from our previous house, and it fallen[sic] through. So we were coming out short. So we asked Tom's mother for a loan. Tom spoke to her, I didn't.
        She had agreed to give us the loan, and then later Tom told me that she had decided to give it to us, just as we had borrowed money from my parents, which we paid them back.
Q.      All right. But you didn't know that there was actually a loan until this morning, and you saw three documents, I believe, that totaled 49,000?
A.      Correct. Tom had approached a friend of ours, who I believe he's a CPA, a vice-president of a bank, about how to get around it, so to speak, how to have it put down as part of his mother's estate, because she had said that she would give it to us.
                              * * *
Q.      And you testified earlier that Mr. Broadwell's mother, whose name is Katherine Broadwell, initially made a loan to you and Tom?
A.      Correct.
Q.      What was that loan for, Mrs. Broadwell?
A.      To help us pay for the house.
Q.      Okay. Mrs. Broadwell, have you ever seen the document that I just placed before you? I didn't give you yours. Okay. Do you recognize those documents, Mrs. Broadwell? [the promissory notes]
A.      I remember working up something for his mom to satisfy her income tax. I don't remember these, specifically.
Q.      Okay. Is that your signature on there?
A.      That's my signature.
Q.      Okay. Is your signature on an -- Well, let me do this. On Loan One-A, is that your signature?
A.      On what?
Q.      Up in the upper left-hand corner?
A.      I just said it was.
Q.      What about Loan Two-B?
A.      The same there.
Q.      And what about Loan Two-C?
A.      Yes.
Q.      I believe it's also your testimony that none of these amounts have been paid back?
A.      Correct.
                              * * *
Q.      All right. And I believe all three documents are dated the same date of three subsequent years, June 1 of '92, '93 and '94; is that correct?
THE COURT: Is this in addition to the other mortgage?

3

MS. SCHULTEN     Yes, sir.

<u>BY MS. SCHULTEN</u>:

Q.     Was any of that money ever repaid, since 1992?

A.     No.

Q.     Is there a monthly payment ever made to your mother-in-law?

A.     No.

Q.     All right.  And do you have--

THE COURT:  I don't think we need to go much further.  If that came from his estate, it's not joint property.

MS. SCHULTEN:  Okay.

THE COURT:  If it came from there, he could easily claim it.  She'd have to show it's a gift.  Unless you've got some strong evidence that it was a gift, I don't see how we can--

                      \* \* \*

Q.     Mr. Broadwell, for the record, will you identify those documents? [the promissory notes]

A.     These are the forms that Judy Wider, who was with Pioneer Bank, now, I believe had recommended that I fill out in order to verify or establish the loan as opposed to it being an outright gift.  Because, obviously, we'd only have a 19,000 or 20,000 dollar limit if my mother gave us the money, and we couldn't even pay the taxes on the balance.  And it was a loan.

So this is what she told us to fill out, as far as the loan.

Q.     Have you paid your mother back these amounts that are due her?

A.     No, we have not.

Q.     Has your mother forgiven these amounts that are due her?

A,     What she's forgiven is basically--

MS. SCHULTEN:  I object, Your Honor.  I think that's hearsay.

THE COURT:  All right.  The question in my mind is she gave the limit she could give.  And, you know, I need some help on that, maybe.  All right.

Taken in its entirety, we think the preponderant evidence is that the $49,000.00 was a loan initially, later gifted by the lender.  The appellee so testified; her testimony was not refuted by the appellant who had ample opportunity to do so, and the lender-donor did not testify.  At any rate, we are unable to find that the evidence preponderates against the finding of the trial judge.

Next, the appellee complains of his oneration for attorney's fees of his wife.  Such fees are in the nature of alimony, and the same statutory factors should be considered.  T.C.A. § 36-5-101(d)(1);  *Wade v. Wade*, 897 S.W.2d 702 (Tenn. Ct. App. 1994); *Houghland v. Houghland*, 844 S.W.2d 619 (Tenn. Ct. App. 1992).

The appellee received $135,000.00 from the sale of the residence, $44,000.00 from her husband's IRA and $6500.00 on a joint checking account.  We agree with the appellant that she has sufficient funds to pay her attorney, and the judgment will be modified accordingly.  As modified, the judgment is affirmed, with

4

costs assessed 75% to the appellant and 25% to the appellee.  The case is remanded for appropriate purposes.

_____
William H. Inman, Senior Judge

CONCUR:

_____
Houston M. Goddard, Presiding Judge

_____
Charles D. Susano, Jr., Judge