IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
APRIL 19, 2004 Session

## KYLE ANN WILTSE v. CHRISTOPHER ALLEN WILTSE

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-003961-01     James F. Russell, Judge**

---

**No. W2002-03132-COA-R3-CV - Filed August 24, 2004**

---

This case involves issues arising out of the parties' divorce.  The trial court divided the parties' marital assets, awarded Appellee alimony *in futuro*, ordered Appellant to pay Appellee's attorney's fees, and ordered Appellant to pay for Appellee's health insurance premiums.  For the following reasons, we affirm in part, modify in part, and remand for any further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Modified in Part & Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Daniel Loyd Taylor, John N. Bean, Memphis, TN, for Appellant

Mitchell D. Moskovitz, Adam N. Cohen, Memphis, TN, for Appellee

**OPINION**

**Facts and Procedural History**

Christopher A. Wiltse ("Appellant") and Kyle A. Wiltse ("Appellee" or collectively with Appellant, "the parties") were married on October 7, 1973, in Norman, Oklahoma.  Both of the parties graduated from the University of Oklahoma; Appellant earned a degree in political science, and Appellee earned a degree in fashion merchandising.  Appellant later earned a masters degree from Central Michigan University.  In 1972, Appellant began a career with the United States Army. For this reason, until 1980, the parties changed residences numerous times, living in Fort Benning, Georgia, Fort Hood, Texas, Oahu, Hawaii, Fort Sill, Oklahoma, and Houston, Texas.  In 1980, Appellant resigned his commission with the U.S. Army as a captain and accepted a position with his current employer, Morgan Stanley, now Morgan Stanley Dean Witter ("MSDW"), in Memphis, Tennessee.  Throughout Appellant's career in the U.S. Army, Appellee worked full time as a sales representative for different clothing and accessory shops, earning the minimum wage.

While Appellant began his career as a financial advisor, Appellee worked at a series of office personnel positions for physicians and then again as a sales representative for another clothing shop, all of which were full time and for minimum wage. In July 1982, the parties adopted their first child, Patrick Wiltse, at which point Appellee switched from a full time schedule to a part time schedule at her clothing sales representative position. When the parties' second child, Allyson Wiltse, was born on March 10, 1984, Appellant and Appellee agreed that Appellee would remain home and care for the children, while Appellant would continue to work for MSDW. Appellee did not return to work until after filing her complaint for divorce, taking a part time position with Hope Presbyterian Church for $7.25 per hour for twelve hours per week. Appellant's income for 1998, 1999, 2000, and 2001 was $279,151, $320,196, $319,787, and $270,371 respectively.

In 1995, Appellee was diagnosed with breast cancer. Since then, she has undergone chemotherapy on nine occasions and radiation treatment on thirty-six occasions. Appellee's oncologist has determined that the cancer is currently in remission. In addition, Appellee takes medication for osteoporosis, diverticulosis, and a thyroid disorder.

In 1996, Appellant began a business relationship with a client, Linda Jamison ("Jamison"). Such relationship became romantic in nature the following year. Appellant and Jamison took trips to various places such as Las Vegas, Nevada and Augusta, Georgia, for which Appellant testified Jamison paid her own way.

Appellee filed her complaint for divorce on June 28, 2001, alleging inappropriate marital conduct, adultery, and irreconcilable differences as grounds. Appellant answered and admitted grounds for adultery, agreeing to stipulate to this ground for divorce. During the discovery process, Appellee filed several motions to compel, requesting sufficient answers to interrogatories and the production of requested documents. In addition, Appellee filed two petitions for contempt, alleging Appellant's failure to follow an order for temporary support and Appellant's dissipation of marital assets.[1] After a hearing in June and July 2002, the trial court divided the parties' marital assets, awarded Appellee alimony *in futuro*, ordered Appellant to pay Appellee's attorney's fees, and ordered Appellant to pay Appellee's health insurance premiums until Appellee's death, Appellant's death, or Appellee's remarriage. After unsuccessfully arguing a motion for the amendment of findings and for alteration or amendment of the judgment, Appellant filed an appeal to this Court and raises the following issues:

I.      Whether the trial court erred in its division of marital assets;
II.     Whether the trial court erred when it awarded Appellee alimony *in futuro* to cover all of Appellee's expenses;
III.    Whether the trial court erred when it ordered Appellant to pay all of Appellee's attorney's fees; and

---

[1]      The trial court stated that there was insufficient evidence to prove either of the petitions for contempt and neither party raises this issue on appeal.

IV. Whether the trial court erred when it ordered Appellant to pay Appellee's health insurance premiums past COBRA[2] coverage when there was no proof regarding the amount of such premiums or if Appellant would have the ability to pay such premiums.

Appellee raises the following additional issues for our review:

V. Whether the trial court erred when it found Appellant had not dissipated marital assets; and

VI. Whether this Court should award Appellee her reasonable attorney's fees incurred on this appeal.

For the following reasons, we affirm in part, modify in part, and remand for further proceedings consistent with this opinion.

## Standard of Review

This Court's review of a trial court's marital property division is *de novo* upon the record, affording a presumption of correctness to the trial court's findings of fact. Tenn. R. App. P. 13(d); *Dellinger v. Dellinger*, 958 S.W.2d 778, 780 (Tenn. Ct. App. 1997) (citing *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993)). As such, trial courts are given wide discretion by appellate courts in the manner in which marital property is divided, and, therefore, its division of marital property is given great weight on appeal. *Dellinger*, 958 S.W.2d at 780 (citing *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987)). Additionally, trial courts have broad discretion regarding the amount and duration of an alimony award. *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994) (citing *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989)). Therefore, we must uphold an award of alimony, absent an abuse of discretion by the trial court. *Vaughn v. Vaughn*, No. E2000-02281-COA-R3-CV, 2001 Tenn. App. LEXIS 572, at *4 (Tenn. Ct. App. Aug. 7, 2001) (citing *Siegel v. Siegel*, No. 02A01-9708-CH-00198, 1999 Tenn. App. LEXIS 139, at *14 (Tenn. Ct. App. Mar. 5, 1999) (citing *Hanover v. Hanover*, 775 S.W.2d 612 (Tenn. Ct. App. 1989))). An award of attorney's fees is also within the discretion of the trial court, and an appellate court will not interfere with such an award unless there is a clear showing of an abuse of discretion. *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995) (citing *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992); *Crouch v. Crouch*, 385 S.W.2d 288, 293 (Tenn. Ct. App. 1964)). All questions of law are reviewed by this Court *de novo*, affording no presumption of correctness to the trial court. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

---

[2] "COBRA" is an acronym for Consolidated Omnibus Budget Reconciliation Act under which a former spouse is entitled to continued insurance coverage for a limited period of time under the employee spouse's group medical insurance.

## Marital Property Division

First, Appellant argues that the trial court erred in its division of the marital property. To guide Tennessee courts in making an equitable distribution of marital property, a trial court must consider the following factors:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2003). In this case, there were two assets that comprised most of the marital estate. The marital residence of the parties, according to the testimony, held a fair market value of $288,000.[3] The other significant asset of the marital estate was the MSDW 401(k) plan worth approximately $814,000 at the time of trial. The trial court awarded Appellee the marital residence, determined that Appellee receive $130,000 off the top of the MSDW 401(k) plan,[4] and ordered that the balance of the MSDW 401(k) plan be equally divided between the parties.

In this case, the parties were married for over twenty-eight years. Both of the parties were fifty-one years of age at the time of trial. While Appellant is in good physical condition, Appellee

---

[3] The equity in the marital residence amounts to much lower than the fair market value. The home had a first mortgage of approximately $121,000, a second mortgage of $23,777, and a First Tennessee home equity line of $67,297, leaving an amount of equity of approximately $75,000.

[4] The trial court awarded Appellee the first $130,000 to satisfy the second mortgage and the First Tennessee home equity line indebtedness, as well as pay the appropriate tax associated with the indebtedness.

is a cancer survivor and requires periodic consultation with her oncologist to ensure that the cancer remains in remission. Additionally, Appellee has begun to suffer from osteoporosis, and she also has been diagnosed with diverticulosis and a thyroid disorder. The trial court found, and the evidence supports, that, given Appellee has not worked a full time occupation in almost twenty years and never received more than the minimum wage, Appellee's earning capacity would be no greater than a full time position for approximately $8.25 to $9.25 per hour. Appellant, on the other hand, has an earning capacity far superior to Appellee as a financial advisor for MSDW. Therefore, Appellant's ability for the acquisition of future assets and income is far greater than Appellee's ability. Both parties contributed equally to the marriage: Appellant as wage earner and Appellee as homemaker. Though Appellee has various items of personalty as separate property, it was undisputed that Appellant holds stocks worth approximately $119,000 as separate property. Given the circumstances of this case, we cannot find that the trial court erred in its division of marital property, and, therefore, we affirm the division of marital assets.

Because dissipation of marital assets is a factor a trial court must consider when dividing the marital estate, we address this issue here. As an initial matter, Appellee asserts that the trial court erred when it placed the burden of proving dissipation of assets on Appellee rather than Appellant, given this Court's decision in *Ward v. Ward*, No. W2001-01078-COA-R3-CV, 2002 Tenn. App. LEXIS 902 (Tenn. Ct. App. Dec. 19, 2002). This Court cited with approval an analysis to guide courts in making a distinction between dissipation and discretionary spending. *Id*. at *9-10. Specifically, this Court stated the following:

> This Court finds instructive an article by Lee R. Russ examining how courts around the country have dealt with the difficult task of making the fine-line distinction between dissipation and discretionary spending. *See* Lee R. Russ, Annotation, *Spouse's Dissipation of Marital Assets Prior to Divorce as a Factor in Divorce Court's Determination of Property Division*, 41 A.L.R. 4th 416 (1985). Trial courts must distinguish between what marital expenditures are wasteful and self-serving and those which may be ill-advised but not so far removed from "normal" expenditures occurring previously within the marital relationship to render them destructive.
>
> In determining whether dissipation occurred, we find trial courts should consider the following: (1) whether the evidence presented at trial supports the alleged purpose of the various expenditures, and if so, (2) whether the alleged purpose equates to dissipation under the circumstances. *Id*. at 420-421. The first prong is an objective test. To satisfy this test, the dissipating spouse can bring forward evidence, such as receipts, vouchers, claims, or other similar evidence that independently support the purpose as alleged. The second prong requires the court to make an equitable determination based upon a number of factors. Those factors include: (1) the typicality of the expenditure to this marriage; (2) the benefactor of the expenditure, namely, whether it primarily benefited the marriage or primarily benefited the sole dissipating spouse; (3) the proximity of the expenditure to the breakdown of the marital relationship; (4) the amount of the expenditure. *Id*. at 421.
>
> We believe the above-announced analysis will be helpful in guiding trial courts when

making this distinction.

*Id*. Appellee's reliance on *Ward* is misplaced. As an initial matter, we note that *Ward* does not speak on the issue of which party has the burden of showing a dissipation of assets, but rather outlines an analysis for courts to use when making a distinction between dissipation and discretionary spending. In general, we note:

> The burden of persuasion and the initial burden of production in showing dissipation is on the party making the allegation, and that party retains throughout the burden of persuading the court that funds have been dissipated, but after that party establishes a prima facie case that moneys have been dissipated, the burden shifts to the party who spent the money to produce evidence sufficient to show that the expenditures were appropriate.

24 Am. Jur. 2d *Divorce and Separation* § 560 (1998) (citation omitted). Therefore, the trial court did not err when it determined that the Appellee, who was the party alleging dissipation of marital assets, had the burden of showing such dissipation.

Next, Appellee argues that the trial court erred when it found Appellee failed to show that Appellant had dissipated any of the marital estate. Specifically, Appellee argues that the evidence shows Appellant dissipated marital assets in four ways: (1) Appellant's expenditures on Linda Jamison; (2) Appellant's cash advances from the First Tennessee equity line and the increasing of the parties' second mortgage; (3) Appellant's unilateral sale of stock; and (4) the payments for marriage counseling when Appellant stated that such counseling was a waste. We hold that the evidence at trial does not preponderate against the trial court's finding that Appellant did not dissipate marital assets.

At trial, Appellant testified that, on the trips that he was accompanied by Jamison, MSDW paid for Appellant's traveling expenses and Jamison paid her own way. In addition, we agree with the trial court that there was insufficient evidence at trial to show Appellant dissipated marital assets by eating at restaurants with Jamison in 1995 and 1996. Appellant testified that Jamison was, at that point in time, merely a business client and not a romantic interest. Next, regarding the cash advances and the second mortgage on the marital home, the evidence fails to support Appellee's argument that Appellant dissipated marital assets. Appellee admitted that, though she can prove Appellant incurred such debts, she was unable to show how Appellant used these funds. Appellant testified thoroughly that such funds were used to improve the marital home, deposited into joint accounts, or used to satisfy his monthly expenses. Appellee simply offers no testimony to show that Appellant dissipated these funds. Third, again, we agree with the trial court that Appellee offers no evidence that Appellant dissipated marital assets by selling some of the parties' stock. Like the argument concerning the second mortgage and equity line cash advances, Appellee attempts to establish dissipation by stating that, because she is unaware of how the funds were used, dissipation must have occurred. Given that Appellant testified he used the proceeds of selling the stock to satisfy debts and marital obligations, such as support payments, we cannot say that Appellee met her burden of

establishing dissipation of marital assets from Appellant's sale of the parties' stock. Finally, Appellee argues that, because Appellant stated that the parties' sessions with their marriage counselor were a waste of time, such fees paid to the marriage counselor constitute dissipation. Again, we must agree with the trial court that Appellee fails to carry her burden on this issue. Though Appellant did state that his joint sessions with the marriage counselor were unproductive, Appellant testified that his one-on-one counseling sessions were helpful. For these reasons, we cannot say that the trial court erred when it found that Appellant did not dissipate marital assets and, therefore, we affirm the findings of the trial court on this issue and the marital property division.

## Alimony *in Futuro*

Appellant argues that the trial court erred in the amount of alimony *in futuro* awarded to Appellee. Specifically, Appellant contends that the trial court failed to consider Appellee's earning capacity in setting the amount of alimony. Tennessee courts are guided by Tenn. Code Ann. § 36-5-101(d)(1) (2001) for determining the amount of alimony, if any, a party should be awarded:

(d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
(C) The duration of the marriage;
(D) The age and mental condition of each party;
(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian

of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (2001). The two most important factors are the obligor's ability to pay and the obligee's need. *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984) (citing *Aleshire v. Aleshire*, 642 S.W.2d 729, 733 (Tenn. Ct. App. 1981)).

In this case, it is undisputed that Appellant's earning capacity far exceeds Appellee's ability to earn income in the future. Appellant is a financial advisor for MSDW, who earned between $270,000 and $320,000 for the years 1998 through 2001. Appellee did not have a full time occupation at the time of trial but estimated that, given her education and work experience, she could find a full time job, earning approximately $8.25 to $9.25 per hour. As noted above, the duration of the marriage was over twenty-eight years, and there was no testimony that either party suffered from a poor mental condition. Additionally, as we noted in our discussion of the marital property division, Appellee is a cancer survivor and has been diagnosed with osteoporosis, diverticulosis, and a thyroid disorder. Each party has contributed equally in their respective roles as wage earner or homemaker. It must also be noted that the parties had developed a comfortable standard of living, allowing for several vacations. Finally, as the trial court observed, this lifestyle and standard of living ended through no fault of Appellee, but rather because of Appellant's extramarital affair with Jamison.

The trial court carefully examined Appellee's requested alimony and her list of monthly expenses. The court deleted some expenses from Appellee's list, such as payments on the second mortgage and First Tennessee equity line of credit, because they were no longer necessary. After reviewing the record as a whole, we cannot say the trial court erred when it awarded to Appellee $5,215 per month in alimony *in futuro*. Therefore, we affirm the trial court's alimony award.

### Medical Insurance Premiums

Next, Appellant argues that the trial court erred by ordering him to pay Appellee's medical insurance premiums beyond the term for COBRA coverage when there was no proof regarding the

cost of such premiums. We note that Tenn. Code Ann. § 36-5-101(f)(1) (2003) states the following:

> (f)(1) The court may direct the acquisition or maintenance of health insurance covering each child of the marriage and may order either party to pay all, or each party to pay a pro rata share of, the health care costs not paid by insurance proceeds. The court may also direct a party to pay the premiums for insurance insuring the health care costs of the other party.

Tenn. Code Ann. § 36-5-101(f)(1) (2003). We are mindful that an order requiring one party to pay medical insurance premiums for the other party is a form of alimony and, as such, will not be reversed on appeal absent an abuse of discretion. *See Watters v. Watters*, 959 S.W.2d 585, 593 (Tenn. Ct. App. 1997); *see also Carter v. Carter*, No. 01-A-01-9005-CV-00188, 1990 Tenn. App. LEXIS 788, at *7 (Tenn. Ct. App. Nov. 2, 1990). In this case, it is undisputed that Appellee has the need for payment of medical insurance premiums. She currently has several preexisting conditions, evidencing the difficulty Appellee will have in obtaining health insurance. Given that medical insurance premiums are regarded as periodic support and, therefore, subject to modification, we believe that such questions of Appellant's ability to pay may be raised by Appellant when the amount of insurance premiums after the term of COBRA coverage is ascertainable. *See Carter*, 1990 Tenn. App. LEXIS 788, at *7-9; *cf. Rowland v. Rowland*, No. 03A01-9312-CH-438, 1994 Tenn. App. LEXIS 224 (Tenn. Ct. App. Apr. 22, 1994) (affirming trial court's denial of appellant's petition to increase spousal support award given that appellee was required to pay more for medical insurance premiums after termination of COBRA coverage). Therefore, we affirm the trial court's award of medical insurance premiums to Appellee.

### Attorney's Fees at Trial

Appellant's final argument concerns the trial court's order designating Appellant responsible for all of Appellee's attorney's fees incurred at trial. Specifically, Appellant argues that Appellee should be responsible for her own attorney's fees in addition to Appellant's attorney's fees, given that her allegations of dissipation of marital assets proved to be unfounded. We begin by recognizing that an award of attorney's fees is akin to an award of alimony. *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000) (citing *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996); *Cranford v. Cranford*, 772 S.W.2d 48, 52 (Tenn. Ct. App. 1989)). Because an award of attorney's fees is treated the same as an award of alimony, the trial court should consider the factors of Tenn. Code Ann. § 36-5-101(d) to determine whether such an award is appropriate. *Id*. "A spouse with adequate property and income is not entitled to an award of alimony to pay attorneys fees and expenses." *Id*. (citing *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997); *Duncan v. Duncan*, 686 S.W.2d 568, 573 (Tenn. Ct. App. 1984)). These awards are appropriate when the requesting spouse has insufficient funds to pay his or her own legal expenses or would be required to deplete his or her resources to pay such fees. *Id*. (quoting *Brown v. Brown*, 913 S.W.2d 163, 170 (Tenn. Ct. App. 1994)).

In this case, the trial court ordered Appellant to assume responsibility for all of Appellee's

attorney's fees, which amounted to $24,401.80.[5] We also note that, while Appellant appeared to be less than forthcoming during the discovery process, Appellee advanced allegations of dissipation for which she had performed little investigation. As the trial court noted in its ruling, the allegations of dissipation of marital assets permeated the entire litigation and was the focal issue. Additionally, we note that Appellee was awarded sufficient assets from the marital estate to pay her legal expenses. For these reasons, we modify the award of attorney's fees and require Appellant to pay half of Appellee's outstanding attorney's fees rather than the entire amount. Therefore, we remand this case to the trial court for further proceedings to modify the award of attorney's fees.

### Attorney's Fees on Appeal

As a final matter, Appellee argues that this Court should award her the attorney's fees she has incurred as a result of this appeal. However, where both parties have been partially successful on appeal, it is inappropriate to award one party his or her attorney's fees incurred on appeal. *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992) (citing *Baggett v. Baggett*, 512 S.W.2d 292, 294 (Tenn. Ct. App. 1973)). Therefore, we decline to award Appellee her attorney's fees incurred on this appeal.

### Conclusion

For the foregoing reasons, we affirm the property division, the award of alimony *in futuro*, the award of attorney's fees as modified by this Court, and the award of medical insurance premiums. We deny Appellee's request for attorney's fees on appeal. Costs of this appeal are taxed equally to Appellee, Kyle A. Wiltse, and Appellant, Christopher A. Wiltse, and his surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

---

[5] This was the final amount of attorney's fees due at the time of the final decree of divorce. Prior to the final decree, Appellee already had paid her attorney $16,081.95 from the parties' Morgan Stanley joint account or a joint credit card.