# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 15, 2010 Session

## MIECHELLE FORGEY-LEWIS  v. JOHN PAUL LEWIS, SR.

### Appeal from the Circuit Court for Bradley County
### No. V-07-452      Lawrence H. Puckett, Judge

---

### No. E2009-00851-COA-R3-CV - Mailed January 28, 2011

---

Prior to their marriage, John Paul Lewis, Sr., ("Husband") and Miechelle Forgey-Lewis ("Wife") signed an antenuptial agreement. In this divorce proceeding filed by Wife, the parties agreed that the antenuptial agreement is valid and enforceable but they disagreed sharply as to its application. The trial court awarded Wife a divorce and alimony in futuro of $3,000 per month retroactive to the date of the filing of the complaint. Wife collected approximately $5,000 of the accrued alimony through garnishments. Husband appeals, challenging the alimony award as well as the garnishments. Wife contends the trial court erred in allowing Husband an offset of approximately $80,000 against her entitlements under the court's orders for payments made by him on joint debts. We affirm the judgment of the trial court except for the garnishments. We quash the garnishments and order the return of funds collected through them to the garnishee.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed in Part and Reversed in Part; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

William P. Price, III, Knoxville, Tennessee, for the appellant, John Paul Lewis, Sr..

James F. Logan, Jr., Cleveland, Tennessee, for the appellee, Miechelle Forgey-Lewis.

### OPINION

#### I.

As previously noted, Husband and Wife signed an antenuptial agreement ("the Agreement"). It recites that the parties entered into it in contemplation of marriage in the

near future and that each prospective spouse had disclosed to the other all of the prospective spouse's assets acquired before the marriage. It further states that "jointly owned" assets acquired during the marriage are to be deemed marital assets not subject to the Agreement. The trial court determined that the Agreement is valid and enforceable. That determination is not challenged on appeal. The primary subject on appeal is the trial court's interpretation and application of the Agreement so as to countenance the court's award to Wife of $3,000 per month in alimony in futuro retroactive to the date of the filing of the complaint. Accordingly, we will first examine the relevant provisions of the Agreement.

The first two numbered paragraphs of the Agreement consist of mutual acknowledgments by the parties that Husband "owns and is entitled to certain property interests and sources of income as more particularly described in Exhibit A" and that Wife "owns and is entitled to certain property interests and sources of income as more particularly described in Exhibit B." Exhibit A specifies pre-marital assets of Husband totaling approximating $2.5 million, including "Lewisco Business" valued at $1.3 million. Exhibit B lists Wife's pre-marital assets valued at approximately $670,000, including her business, "Forgey's Fashion & Shoes."

Other provisions of the Agreement, with particularly-relevant sections italicized, are as follows:

> 3. Earnings. It is anticipated after marriage each party will devote their full time and effort to the business known as Lewisco Auction and Realty Company. *All net income after the date of marriage of Lewisco Auction and Realty Company is to be split 50/50.* Any income or earnings from any other source shall remain the separate property of each party. It is anticipated that the profits of Lewisco Auction and Realty Company shall be distributed at the end of each calendar year. *Prospective Wife shall not acquire an ownership interest in Lewisco Auction and Realty Company.*
>
> 4.1 Releases in After-Acquired Property. In the same manner as described above, each of the parties release and relinquish any claims to any after-acquired property belonging to the other party. . . .
>
>        *    *    *

5.  Debts. . . . . All . . . debts incurred by or against the parties jointly shall be the responsibility of the parties jointly.

* * *

8.  Joint Use of Separate Property.  It is acknowledged by the parties hereto that from time to time, each or both may desire to contribute income or proceeds from their Separate Property for use and enjoyment by the parties jointly.  To the extent that either or both may do so, the parties acknowledge and agree that such use of income or proceeds of Separate Property shall not be deemed to convert such Separate Property to marital property, and that property interest or source of income from which the income or proceeds is derived for such marital use shall be, remain, and continue to be the Separate Property of the respective party hereto.  The parties may convert any separate property to jointly owned property by the execution of deeds or other instruments of conveyance and such property shall thereafter be deemed marital property and shall not be subject to this agreement.

* * *

10.1  Termination of Marriage.  *In the event of the termination of marriage by divorce or for any reason other than death*, the Separate Property of each party as it exists at that time, shall be and remain his or her Separate Property and each party hereto waives and releases any claim, right, title, or interest in and to such Separate Property in such event. This waiver applies to the ownership, control and enjoyment of Separate Property acquired by either of the parties after their marriage and each waives any interest in such property acquired after marriage.  This waiver also applies to the increase in the value of Separate Property. *The following additional terms and conditions shall apply*:

10.1.1 All of the Separate Property, as defined in this agreement, shall be awarded to and retained by the party whose Separate Property it is, and shall not be deemed marital property for any purpose, including its treatment under any statute describing the

jurisdiction of any court to make and effectuate a decree distributing marital property in such event;

10.1.2 All property which is held jointly by the parties with the right of Survivorship, or held by the parties as tenants by the entireties, and all other property in joint names as to which the proportions of ownership are not specifically evidenced, shall be divided into equal shares by the parties in further settlement of such marital rights, and all other jointly held property shall be divided between the parties as their interests appear on the deed or other instrument evidencing title to the property;

\*     \*     \*

10.1.4 Neither party shall be responsible for any of the personal debts of the other, and any joint indebtedness, or any indebtedness as to which both parties may be or become jointly or severally liable under applicable law, shall be assumed equally by the parties;

10.1.5 *Each of the parties shall waive any right of support, maintenance, or alimony which he or she may be entitled to receive from the other as provided by law, and each agrees not to institute or necessitate any action to secure any such right with the exception that the court may award up to $3,000 per month in alimony to a non-defaulting party. In the event of a no fault divorce or dissolution by agreement, no alimony shall be provided to either party.*

10.1.6 The parties shall, as a part of the proceedings related to the termination of the marriage, enter into a valid and enforceable settlement agreement containing the relevant provisions of this agreement and not otherwise inconsistent with this instrument, which agreement together with the rights and obligations under this instrument shall constitute a full satisfaction of the marital property and support rights of the parties.

10.2 Final Settlement: Inclusion of Agreement in Divorce Decree. The provisions contained in this Agreement are, in the

event of divorce, contemplated and intended to be a final accord and satisfaction of all rights of the parties growing out of the contemplated marriage. Either or both parties shall have the right to present this Agreement to any court of competent jurisdiction and to request the approval and implementation of the same by the Court, should any divorce action ever be filed by either party against the other party.

(Emphasis added).

The trial court's disposition after a bench trial is contained in three orders entered, respectively, on March 13, 2009, May 7, 2009, and May 14, 2010. We will refer to the orders in chronological sequence as "the first order," the second order" and "the third order." The first order contains most of the substantive holdings of the court. It states:

[Wife] is presently forty-five (45) years of age.

[Husband] is seventy-two (72) years of age.

[Wife] has had two (2) prior marriages that ended in divorce.

[Husband] has one prior marriage in which he was widowed after forty-one (41) years of marriage. At the visitation for his wife, [Wife] slipped her phone number to [Husband]. She believes he had been in love with her for years.

The parties hereto were legally married on the 9th day of April 2005 in Cleveland, Bradley County, Tennessee, and no children were born of this union.

* * *

By the terms of the Antenuptial Agreement, the parties are required to equally divide any jointly acquired marital property and to be equally responsible for any joint marital debt . . . .

The parties own jointly the Driscoll property and share a fifty (50%) percent interest in the equity contained in the Driscoll property.

The parties were obligated to pay equally the mortgage payments, the property taxes, and the insurance on the Driscoll property.

[Husband] paid all of the mortgage payments, property taxes, and insurance on the Driscoll property in the aggregate amount of $161,711.96. The joint obligation of [Wife] for these payments will be dealt with later by the court.

The Driscoll property should be sold and the proceeds after mutual indebtedness should be divided equally. Any debt remaining shall be the obligation of each pursuant to paragraph 10.1.4 [of the Agreement].

\* \* \*

Prior to the marriage, [Wife] was the owner of a retail clothing and shoe business known as Forgey's Fashions. . . .

At the time of the marriage Forgey's Fashions was not a profitable business.

\* \* \*

Until approximately 9 months before the marriage of the parties, [Wife] was operating Forgey's Fashions and was able to meet her debts and obligations and maintain her standard of living at her separate property in Weston Hills. As the parties' relationship became more involved, [Wife] began to play a role in the operation of [Husband's] business. Shortly before the marriage [Wife] became an employee of [Husband's] business. [Wife] sold her business and in fact [Husband] acknowledged signing the contract to close [Wife's] business. [Wife] then qualified for her real estate license and passed the examination to become an affiliate auctioneer with [Husband's] business.

In the fifteen (15) months following the separation, [Wife] earned $1,600 dollars in income and made only one (1) application for employment.

-6-

[Wife] has waived any claim to the net income of [Husband's] business known as Lewisco, which earned in excess of $240,000 in revenue in 2008. However [Husband's] business lost money and he had to sell premarital assets to supplement the business in the amount of approximately 150 to 160 thousand dollars.

In the summer of 2008, [Wife] had a back injury, which required her to undergo a spinal fusion procedure, and she was not able to work from that time up until the trial.

Since her back injury, [Wife] lived at the home of her father's fiancé.

* * *

During the course of the marriage, the parties purchased what is known as the Driscoll property. [Husband] has continued to reside in, use, and maintain control of the Driscoll property during the course of the separation of the parties. The parties purchased the so-called Driscoll property for the sum of $715,000 . . . . A down payment of $65,000 was made. The parties invested substantial monies and time in improving this property. . . .

Since the purchase of the Driscoll property, [Husband] has paid $137,711.96 in interest payments on the loan.

[Husband] paid $12,000 in property taxes on the Driscoll property.

[Husband] paid $12,000 in insurance on the Driscoll property.

[Wife] made no interest, property tax, or insurance payments on the Driscoll property.

Pursuant to . . . the parties' Antenuptial Agreement, the court has made an offset in the division of marital property to enforce [Wife's] obligation to pay one-half of the joint indebtedness of the parties incurred during the marriage on their jointly owned Driscoll Property. Under the proof the off set is one-half of

$161,711.96, paid on the Driscoll Property entirely by [Husband] during the marriage. As a result [W]ife's share of the joint indebtedness arising from the parties acquisition of the Driscoll Property ($80,855.98) shall be added to her marital property division and the resulting total ($93,812.98) less [H]usband's distribution of $88,085 leaves [W]ife owing a cash settlement to him of $2,863.99 in order to equal out the division of marital property. . . .

Exhibit 6 and the pencilled notations of the court thereupon are incorporated herein as the court's classification, valuation, and division of the parties' separate and marital property.

* * *

[Wife] has sustained her grounds and is awarded the divorce from [Husband] because of his inappropriate marital conduct.

[Husband] made payments from the joint account of the parties and/or [Husband's] businesses during the marriage to financially repair [Wife's] financial circumstances. Specifically, at the time of the marriage, [Wife] had a credit card debt of $48,000 and her tax return showed that Forgey's Fashions lost $43,387.98 during that year.

Following the marriage, [Husband] made payments in 2005 for the benefit of [Wife] in the amount of $37,345.10.

In 2006, [Husband] made payments for the benefit of [Wife] in the amount of $78,707.45.

In 2007, [Husband] made payments for the benefit of [Wife] in the amount of $12,922.79.

Due to the short duration of the marriage and other facts and circumstances in the case, the court finds [Wife's] tangible and non-tangible contributions to the marriage to be much less than the financial contributions of [Husband] to [Wife] and her material and economic benefit. However the court notes that her contributions, such as they are, were of a nature and extent fully

contemplated by the parties before the marriage in that [Husband] desired to provide for her and did not expect financial contributions so much as her[] love and affection which she tendered him until [Husband's] conduct drove her away. [Wife] joined in [Husband's] business efforts by gaining her auctioneers and real estate license by discontinuing her outside business of Forgey's Fashions.

The court has granted [W]ife the divorce from [H]usband on the grounds of [Husband's] inappropriate marital conduct. [W]ife is awarded $3,000 per month alimony as provided for in the Antenuptial Agreement. The proof has shown this amount is needed by [W]ife and [H]usband has the ability to pay. During their time together [H]usband annually spent a similar amount for the benefit of [Wife].

\* \* \*

The court understands the parties' Antenuptial Agreement leaves to the trial court the determination of fault for the termination of the marriage and the allocation of spousal support up to $3,000 to a party not at fault. Upon consideration of the factors set out in T.C.A. 36-5-121(i) 1-12, the court finds the sum of $3,000 is appropriate support for [Wife]. . . . [H]usband's physical and emotional abuse of [W]ife is the sole reason that [W]ife was finally compelled to separate and divorce herself from him. Fault for the divorce as contemplated by the parties in their Antenuptial Agreement rests solely upon [Husband].

The first order contemplated additional orders and so stated.

Husband and Wife both filed motions challenging aspects of the first order. The second order deals primarily with those motions. In the second order, the court "ratified and affirmed [the first order] in all respects." Specifically, the second order states,

The initial Motion which was filed by [Husband] raises issues regarding the nature and extent of the alimony award, the method and manner of the sale of the real property jointly owned by the parties, and the filing of the income tax for the tax year

-9-

2008. [Wife's] Motion addresses the same issues and the additional issue of the amount of the setoff granted to [Husband].

After having heard argument of counsel and due consideration, the Court announced that it had considered the issues raised by the parties in evaluating the testimony and the terms and conditions of the Antenuptial Agreement. It is the opinion of the Court that the alimony is alimony in futuro terminable only at the death of [Husband] or [Wife] or the remarriage of [Wife]. It was the further opinion of the Court that the alimony award is retroactive to the date of the filing of the Complaint, which is June 1, 2007.

The court certified its second order as a final judgment pursuant to Tenn. R. Civ. P. 54.02

Much procedural confusion ensued, none of which is germane to this appeal[1] other than a "garnishment and execution" which we will deal with in the next paragraph. It is sufficient to state that post-judgment motions resulted in the third and final order of the trial court denying Husband's motion to alter or amend in all respects "except that the alimony in futuro award may be terminated pursuant to all statutory factors." For its reasons, the court stated, "[t]he findings and rulings of the Court and the reasons for the rulings of the Court were announced in open court as is set forth in the Transcript of the [May 14, 2010] hearing of the Motions which is incorporated herein as if set forth verbatim." At this point in our opinion, we will refrain from quoting the transcript at length and only refer to it as is necessary to resolve the issues raised on appeal. After entry of the trial court's third order, Wife filed an amended notice of appeal which referred to an earlier notice of appeal filed after the second order but before the third order.

Shortly after the trial court made the alimony retroactive in its second order, Wife caused numerous garnishments to be issued toward collection of $72,000 in accrued alimony. One of those garnishments, which, for ease of reference, we will refer to as "the Garnishment," returned the amount of $5,280.60 from garnishee First Tennessee Bank on

---

[1]We will provide a few highlights as we understand them. Husband filed a motion to alter or amend and an amended motion to alter or amend. The trial court entered an order, apparently tendered by counsel for Wife, purporting to dispose of the motions. Husband insisted that there had been no disposition of at least parts of his motion. Nevertheless, Husband filed a notice of appeal. Somewhere in time, Husband changed counsel. Husband filed a motion in this court for the case to be remanded to the trial court for disposition of the post-judgment motions. We remanded. The trial court admitted on remand that it had not ruled on all aspects of the motions to alter or amend and set the matter for hearing.

an account held in the name of Lewisco Auction and Realty[2]. Husband moved to quash the Garnishment on two grounds. One ground was that the Garnishment was incorrectly issued from *general sessions court* rather than the trial court. The other ground was that the Garnishment violated the 30-day stay provided for in Tenn. R. Civ. P 62.01 because the judgment was the subject of a motion to alter or amend and had not become final when the Garnishment was issued and served on the bank. The trial court denied the motion to quash, stating that "after due consideration, the Court had authorized the Clerk of this Court who is also the Clerk of the General Sessions Court to issue the execution in this case. . . . . [T]he executions had been issued in the name of the State of Tennessee under the appropriate docket number and style of this cause by . . . Brenda Baylor who is a Deputy Clerk of the Circuit Court Clerk of Bradley County, Tennessee who also has jurisdiction over the Sessions Court of Bradley County." The trial court did not address Husband's argument about the stay provision, but it is implicit from other parts of its contemporaneous order that the trial court was under the mistaken belief at the time that the judgment had ripened into a final judgment long before the Garnishment issued. In its final hearing which resulted in the third order the court stated "I've got to honor that first 30-day stay . . . from today or from the date of the order, I guess it is." The court also noted that "I do think having heard this motion does affect that stay period." Accordingly, the court ordered "that the automatic stay shall remain in effect for thirty (30) days from [the] date hereof." On June 14, 2010, the court entered an order dealing further with the collection of alimony pending appeal and disposition of the funds from the Garnishment that remained in the custody of the court. The order states, in pertinent part:

> In considering the Motion for Release of Funds and to require [Husband] to pay the alimony, and [Husband's] request for a stay bond, the Court opined that [Wife] should be required to subject the real property which she holds in her name and in which she has a significant equitable interest to a lien in favor of [Husband] in the event that [Husband] is successful on appeal. This lien shall be imposed by the Judgment rendered herein. The Clerk of the Court shall forthwith release the funds held in *custodia legis* and the [Husband] shall comply with the orders requiring him to pay alimony in the amount of $3,000 per month as is set forth in the Order of May 7, 2009 pending the appeal.

---

[2]The Garnishment is representative of all the garnishments with regard to the issues raised on appeal. Apparently, no funds were obtained from the other garnishments.

II.

Husband raises the following issues for our consideration:

Whether the trial court erred in ordering alimony to start retroactively, on the date the complaint was filed.

Whether the trial court erred in awarding any alimony to [Wife] when [Wife] was not a "non-defaulting" party under the Antenuptial Agreement.

Whether the trial court erred in not restoring [Wife] to her pre-marital financial condition with respect to alimony when the marriage was of extremely short duration.

Whether the trial court erred by not awarding rehabilitative alimony and awarding in futuro alimony . . . .

Whether the trial court erred in not quashing executions and garnishments to collect back alimony when they facially were not issued by a court having any subject matter jurisdiction over any aspect of alimony, the parties, or the civil action, and when their issuance violated the automatic stay period [in Tenn. R. Civ. P. 62.01].

Wife raises an additional issue, to-wit, whether she is required "[u]nder the Antenuptial Agreement . . . to pay one-half of the interest, principal, insurance and tax payments which had been paid during the marriage on the parties' marital residence."

III.

The various issues call into play differing standards of review. Conclusions of law are reviewed *de novo* with no presumption of correctness. ***King v. Pope***, 91 S.W.3d 314, 318 (Tenn. 2002). A trial court's findings of fact are presumed to be correct unless the evidence preponderates against those findings. Tenn. R. App. P. 13 (d); ***In re Angela E.***, 303 S.W.3d 240, 246 (Tenn. 2010). Determinations with regard to spousal support are discretionary based upon statutory factors. ***Anderton v. Anderton***, 988 S.W.2d 675, 682. (Tenn. Ct. App. 1998). Accordingly, they are reviewed under an abuse of discretion standard. ***Robertson v. Robertson***, 76 S.W.3d 337, 342 (Tenn. 2002). Abuse of discretion is usually predicated upon application of an incorrect legal standard, unsound reasoning, or reliance upon erroneous

-12-

facts. ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001). Interpretation of written documents, such as the Agreement, is a matter of law for the court that is reviewed *de novo* with no presumption of correctness. ***Allstate v. Watson***, 195 S.W.3d 609, 611 (Tenn. 2006).

IV.

Husband makes four arguments challenging the start day of alimony retroactive to the filing date of the complaint. We begin by noting that both parties agree that the Antenuptial Agreement must be enforced, as the trial court held. The trial court also correctly held that the parties waived any support or claims to their separate properties except as set out in the Agreement. *See* Tenn. Code Ann. § 36-3-501(2010); ***Cary v. Cary***, 937 S.W.2d 777, 782 (Tenn. 1996).

With this background we can move to Husband's first contention, which is:

> [t]he Agreement clearly specified the parties mutually-agreed intended starting date for any alimony award. That date, which differs from the date in the Order, is clearly determined by reference to an event, as the following portion of the . . . indented-bolded and quoted language from the Agreement: **"[i]n the event of the termination of marriage by divorce**. . . ." This provision clearly states that marriage must be terminated by the **event** of divorce before alimony may commence. This meaning is so clear that it should be self-evident.

(Bold type and omission in original). The long and the short of the argument, fully supported by lengthy dictionary definitions of the word "event," is that the final judgment of divorce is the "event" before which no alimony is available.

The trial court disagreed, and so do we for the same reasons stated by the trial court. The trial court noted, correctly, that the Agreement does not *expressly* provide a start date for an alimony award. It is true enough that alimony is not available under the terms of the Agreement without a divorce, but that does not mean, and the Agreement does not say, that alimony cannot start before the effective date of the divorce. The trial court correctly observed that since the ultimate effective date of a divorce can be delayed through the appeal process, Husband's argument means that alimony could not start until after the exhaustion of appeals. There is nothing in this record to suggest such an intention by the parties.

Husband's second challenge to the start date is that it "contravenes the statutory scheme for alimony awards." The statutory scheme to which Husband refers is the one found

in Tenn. Code Ann. § 36-5-121 (2010). Subsection (b) of 36-5-121 allows a trial court in its discretion, "after notice and hearing," to award support "pending the final hearing . . . necessary . . . to enable such spouse to prosecute or defend the suit." Subsection (d) of the statute then allows the court to award "rehabilitative alimony, alimony in futuro, . . . transitional alimony, or alimony in solido . . ." in the final decree. Husband argues that since Wife did not move for *pendente lite* alimony, and no hearing was held on a non-existent motion, that alimony *pendente lite* could not be awarded.

Again, we must disagree with Husband. The result is that we find no abuse of the trial court's discretion and no error of law. We note that, in the complaint, Wife put Husband on notice she was claiming to be "in dire need of assistance and support" and asking for "all the rights which she has pursuant to the antenuptial agreement and alimony in the amount of Three Thousand Dollars ($3,000) per month." The issue of start date was specifically argued in numerous hearings. To this pendente lite argument, the trial court responded:

> I'm not saying I would award this as pendente lite. I would
> award it [by analogy] as contract damages . . . from the date of
> the breach of the contract. And so when she had to file divorce
> and she had grounds . . . for divorce, then the payment of
> alimony will accrue on that date. . . .
>
> * * *
>
> . . . [M]y whole effort is to enforce the agreement.

We do not necessarily concur with the "breach of contract" language, but we do agree that the circumstances of this case, which include Husband inducing Wife to abandon her business and put all her efforts into his, his later abuse of Wife to the point of forcing her to divorce him, and the lack of language in the Agreement that prohibits alimony from starting on the date of filing the complaint, fully support the award of alimony retroactive to the date of the complaint. Thus, we hold there was no violation of the statutory scheme and no abuse of discretion.

Husband's third challenge to the start date of the alimony is that the trial court awarded it as breach of contract damages without any basis for finding that Husband breached the Agreement and without any proof of actual damages that flowed from the alleged breach. Although we disagree with Husband that his physical abuse of Wife[3] and his undeniable verbal abuse did not constitute a "breach of contract," we need not base our

---

[3]The trial court expressly stated that it did not believe Husband's version of the "abuse" events.

disposition on this one disagreement. We have reviewed the transcript and find it unmistakably clear that the trial court's ultimate goal was to enforce the Agreement as written, and to determine, in the exercise of reasoned discretion, what benefits Wife would receive as a result of the loss of the marital relationship, which the trial court likened to "loss of the contractual relationship." We do not agree that the trial court disposed of this case based on damages for breach of contract. We will not repeat our prior analysis on related issues, which is consistent with our discussion of the current issue. We simply hold that the trial court did not commit reversible error by its reference to "contract" damages.

Husband's fourth argument challenging the start date of alimony is that since it is not permissible under the Agreement, and not permissible for all the other reasons he has argued, then it must be an impermissible punitive award against a guilty spouse. *See* **Duncan v. Duncan**, 686 S.W.2d 568, 572 (Tenn. Ct. App. 1984)(punitive alimony is not allowed). We have previously held that the Agreement did not prohibit alimony from beginning on the date of the filing of the complaint. Accordingly, we reject this "process of elimination" argument and reiterate our holding that the trial court did not abuse its discretion in commencing alimony effective as of the date of the filing of the complaint.

The next issue we address is whether Wife was precluded from receiving alimony because she did not qualify as a "non-defaulting" party as required by the Agreement. Section 10.1.5 provides that

> the court may award up to $3,000 per month in alimony to a *non-defaulting party*. In the event of a no fault divorce or dissolution by agreement, no alimony shall be provided to either party.

(Emphasis added). Husband argues that Wife was in default, and therefore did not qualify for alimony, because she breached section 10.1.6 which we have quoted verbatim above. Paraphrased, it purports to require the parties to settle and not litigate their rights and obligations under the Agreement. Once again, this Court must disagree with Husband and finds itself in agreement with the trial court's interpretation of the Agreement. Another provision of the Agreement of equal or more force than 10.1.6, is section 10.2 which we have also quoted previously. It clearly contemplates the right to proceed in the event of a disagreement by presenting "this Agreement to any court of competent jurisdiction and to request the approval and implementation of the same by the Court." Section 10.1.5, situated immediately before section 10.1.6, recognizes that in "a no fault divorce or dissolution by agreement, no alimony shall be provided" but in a contested divorce "the court may award up to $3,000 per month in alimony to a non-defaulting party." The trial court correctly concluded that the term "non-defaulting," in context, means the party that did not cause the

divorce. We hold that Wife is the "non-defaulting" party; accordingly, we reject Husband's argument.

Husband's next argument is that the trial court should have restored Wife to her pre-marital financial condition in this marriage of short duration. Husband's argument is based entirely upon the following sentence in *Broadbent v. Broadbent*, 211 S.W.3d 216, 222 (Tenn. 2006): "Given the extremely short duration of the marriage in this case, the primary goal should be to place the parties in approximately the same position they were in before the marriage." We generally have no disagreement with the quoted language, but it is not controlling in the present case. First, the trial court correctly found that Husband knew going into the marriage, through the process of full and complete disclosure, that he was taking a wife that was not his financial equal. It was the love and affection of the much younger woman that he wanted rather than her money. He made the choice to enter the Agreement knowing full well that it made provision for alimony in the event of divorce. There was no such antenuptial agreement in *Broadbent*. Second, the marriage, as reflected in the terms of the Agreement requiring Wife to abandon her business and direct her efforts toward Husband's business, effectively eliminated any chance to restore her to her pre-marital financial condition other than through alimony in futuro. Third, although *Broadbent* contains the statement we have quoted, the statement is made in the context of other statements that cannot be ignored. The topic sentence of the paragraph that contains the quoted language identifies "the duration of the marriage" as only one of several statutory factors that a trial court should consider. *Id*. Another sentence in Broadbent recognizes that "[t]he two most relevant factors in determining the amount of alimony awarded are the economically disadvantaged spouse's need and the obligor spouse's ability to pay." *Id*. It is noteworthy that *Broadbent* reversed this court and reinstated the trial court's judgment, *id*. at 223, after giving emphasis to the trial court's "broad discretion" and directing that appellate court's should focus on whether the trial court applied the "correct legal standard and reached a decision that is not clearly unreasonable." *Id*. at 220. The trial court in the present case specifically noted that it had considered all the statutory factors, including Wife's need and Husband's ability to pay. We conclude therefore that *Broadbent* does not stand in the way of our holding that the trial court did not abuse its discretion in awarding alimony despite the short duration of the marriage.

Husband's final challenge to the alimony award is that the trial court erred in not applying the statutory bias in favor of rehabilitative alimony. Husband concedes that the trial court stated a finding that Wife cannot be rehabilitated, but argues the finding is a hollow conclusion because there was no analysis of Wife's earning capacity compared to Husband's standard of living to be expected after the divorce. Husband ties his argument to the following statutory language:

(d) . . . (2)  It is the intent of the general assembly that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to *the standard of living enjoyed during the marriage*, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

\* \* \*

(f)(1) Alimony in futuro, also known as periodic alimony, is a payment of support and maintenance on a long term basis or until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to *the standard of living enjoyed during the marriage*, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(emphasis added).  We have added emphasis to the phrase "the standard of living enjoyed during the marriage" because it is language that Husband conspicuously omits in his brief.  As Wife points out, this is an important omission because, even though Husband criticizes the trial court for not making an explicit finding with regard to standard of living available to Husband after the divorce, Husband does not give the court credit for making findings regarding the standard of living during the marriage.  The transcript of the May 14, 2010, hearing which the trial court incorporated into the third order, reveals the trial court did consider the prospects of rehabilitation, Wife's physical limitations, Husband's earning ability, and Husband's unbelievable claims that he had lost his ability to earn substantial sums of money.  We will quote selectively from that transcript to illustrate the basis for our observation.

Now I awarded alimony in futuro. That's what I did [instead of rehabilitative alimony pursuant to ] [p]aragraph 36-5-121(d)(2) . . . .

*   *   *

Certainly when you look at . . . the status she enjoyed as his wife and the payments he made to her or for her benefit while married, I don't think she can achieve that through any amount of rehabilitation. She just can't.

*   *   *

The age and mental condition of each party, now, granted Mr. Lewis is an older gentleman, but the marriage and all the circumstances surrounding the marriage, including the alimony agreement, took place with full knowledge of that, that he was older than she. But she does have some health problems at this point, and I have to take that into consideration too. . . .

The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease, I think Mrs. Lewis has shown that she has such a condition, that it has some effect on her earning capacity. I think Mr. Lewis seems to be pretty robust. That's the state of the proof that I heard anyway. . . . [A]s he sits before the Court, he seems capable of ongoing business enterprises as he's done in the past.

*   *   *

[C]redibility issues about [whether his business is losing money,] why she gave her business up, whether he induced her to do so, whether he wanted her dependent on him financially or not and all those factors I resolved in favor of [W]ife's contentions. . . .

In response to Husband's argument, Wife also correctly points out that "[t]he statutory preference for rehabilitative alimony does not entirely displace other forms of spousal support when the facts warrant long term or more open-ended support." *Bratton v. Bratton*,

-18-

136 S.W.3d 595, 605 (Tenn. 2004)(*quoting Anderton*, 988 S.W.2d at 682). In this case, as in **Bratton**, we conclude that the trial court exercised its discretion in view of all the appropriate factors, based on findings of fact that are not against the preponderance of the evidence. Therefore, we hold there was no abuse of discretion by the trial court in awarding alimony in futuro instead of rehabilitative alimony.

Husband raises one issue which has to do with collection of the award as opposed to the nature and amount of the award. Husband argues that the Garnishment should have been quashed and any money collected refunded because the Garnishment was issued out of general sessions court. We have examined the Garnishment, and conclude that any reasonable person who looks at it would recognize that it is a garnishment issued out of circuit court on a general sessions form adapted to circuit court. It is true that a person looking for an excuse to invalidate the Garnishment can find the words "general sessions court" in places on the form that have not been blotted out and replaced with the words "circuit court." However, the front page of the document bears the correct caption and docket number with the reference to "Sessions" blotted out to reflect that the issuing court is "Bradley County Circuit Court." Accordingly, we reject the argument that the trial court committed an error of law in refusing to quash the Garnishment as one issued by the wrong court.

Another argument that Husband makes is that the Garnishment was issued before entry of the final judgment and therefore violated Tenn. R. Civ. P. 62.01. Rule 62.01 provides, in pertinent part, that subject to certain limited exceptions "no execution shall issue upon a judgment, nor shall proceedings be taken for its enforcement until the expiration of 30 days after its entry." In the event of a motion to alter or amend, the stay is extended "pending and for 30 days after entry" of the order granting or denying the motion. Tenn. R. Civ. P. 62.02. Wife offers merely that her ultimate receipt of the funds from the Garnishment was allowed by an order entered on June 14, 2010, which secured Husband against any loss by imposing a lien on her real property. We do not see Wife's response to be germane, other than to show that if we hold that the Garnishment should have been quashed and the funds returned to Husband, he will have some assurance that the monies will be returned. As we see it, Wife offers nothing to show that this case fits within a recognized exception to the general rule, and we are not aware of any obvious exception. The trial court obviously, from the transcript of the last hearing and the language of the third order, found merit to Husband's argument that Rule 62.01 applied to the court's alimony award. Further, Rule 62.02 would extend operation of the stay from the time of the second order all the way through entry of the third order. Accordingly, we conclude that the Garnishment should have been quashed and that the monies paid into the court by the garnishee should have been returned to the garnishee.

We admit that our holding is not without some discomfort. It has the result of returning money to the benefit of a party that clearly owes that amount and more. It also seems to counteract the ability of a trial court to enforce an award of alimony *pendente lite*. As for the latter concern, we will be content for now to state that we have, surprisingly, found no law on the interaction of Rule 62.01 with the ability of trial courts to enforce awards of alimony *pendente lite* by execution, which seems to be a given according to 19 Tennessee Practice, Garrett § 10.2 (2007). We also note that the trial court specifically stated that its award in this case was not a *pendente lite* award under the statute, but an award under the Agreement. As for our concern with returning money to the benefit of someone who owes even more money, we will be content to observe that Wife now will have available on remand numerous avenues of collecting the judgment as affirmed.

We turn now to Wife's issue of whether Husband should have been allowed an offset in the amount of one-half the amount he paid on interest, taxes and insurance on the Driscoll property. Wife's only argument against the offset is that to allow an offset for payments made "while the parties were working together and jointly paying their debts and obligations" would be to "allow [Husband] to take advantage of the [Wife's] work in the operation of their businesses and then . . . require [Wife] to reimburse him for the same." We disagree. The provision in the Agreement allowing Wife to share in the income of Lewisco was limited to "net profits" and according to the proof, including income tax returns, Lewisco sustained losses in the years the parties cohabited. The court found that most of the economic upkeep of the marriage fell to Husband, and the court specifically found that Husband, and not Wife, paid the obligations on the Driscoll property. Husband testified that the source of the money was from selling his separate property. The court also found, correctly, that the accrued debt was made a joint responsibility by the Agreement. The Agreement, in our view, compels the offset ordered by the trial court. The trial court's factual findings are fully supported by the preponderance of the evidence, and there is no abuse of discretion in requiring Wife to reimburse Husband, by way of an offset.

V.

The judgment of the trial court is affirmed in part and reversed in part. That part of the judgment awarding alimony in futuro of $3,000 per month retroactive to the date of the filing of the complaint is affirmed. The judgment allowing Husband a setoff in the amount of $80,855.98 for payments he made toward joint obligations on the Driscoll property is also affirmed. That part of the judgment denying Husband's motions to quash the various garnishments is reversed. On remand, the proceeds of any garnishments that were the subjects of Husband's motions to quash shall be returned to the garnishee. Costs on appeal are taxed to the appellant, John Paul Lewis, Sr. This case is remanded, pursuant to applicable

law, for enforcement of our order quashing the garnishments, as well as collection of costs assessed below and enforcement of those parts of the judgment that we have affirmed.

_____
CHARLES D. SUSANO, JR., JUDGE